**HALLMARK PERSONNEL OF TEXAS, INC., Appellant,**

v.

**Robert FRANKS, dba Robert Franks & Associates, Appellee.**

**No. 17050.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 23, 1978.

Richie, Greenberg & Brackman, David D. Peden, Jr., Houston, for appellant.

Roger H. Broach, The Woodlands, for appellee.

EVANS, Justice.

This is an appeal from the trial court's order denying the plaintiff's application for temporary injunction.

Hallmark Personnel of Texas, Inc., an employment agency, brought this action against Robert Franks, dba Robert Franks & Associates, to enforce a contractual covenant not to compete and to restrain misappropriation of trade secrets. At the conclusion of Hallmark's case, the trial court granted Franks' motion to deny the application for temporary injunction.

The employment contract between Hallmark and Franks dated February 25, 1975, forbids Franks from competing with Hallmark in the employment agency business for a period of six months following the termination of his employment. Franks terminated his employment in May, 1977, and in June, 1977, he commenced his own business. Thus, the six month period provided by the contract expired during the pendency of this appeal.

■ The existence of an actual controversy is essential to the exercise of appellate jurisdiction. If prior to the determination of the appeal the controversy is terminated, the appeal becomes moot. *In re Ivey,* 534 S.W.2d 163 (Tex.Civ.App.—Austin 1976, writ ref'd n. r. e.). Thus Hallmark's points of error dealing with this aspect of the appeal need not be considered. Since there are other issues in the appeal which have not become moot, the appeal will not be dismissed. *Weatherford Oil Tool Company v. Campbell,* 161 Tex. 310, 340 S.W.2d 950, 953 (1960).

It is Hallmark's position with respect to the trade secrets issues of the appeal that the uncontroverted evidence shows that Franks breached his contractual and common law duties to preserve Hallmark's confidential disclosures of customer and business information.

The contract of employment provides that all records, material and information obtained by the employee in the course of the employment are confidential and that the employee will not at any time after the termination of his employment use the contents of such records or the information so acquired. Hallmark contends that it is entitled to common law protection of its confidential disclosures of business information consisting of "customer lists, training techniques and an analysis technique known as 'features, benefits and needs'."

Franks testified that upon termination of his employment, he took no applicant lists nor employer contract cards, and that the only record which he took with him was one which he had prepared for his personal use in preparation for a possible Certified Employment Consultant examination. This record, he testified, contained information on the types of placement he had made with Hallmark, where he had placed the applicants, the amount of the fee involved, and by whom it was paid. This record does not contain the names of persons to contact at the particular companies where placements were made. Although Franks testified that he was presently contacting employers for whom he had made placements while at Hallmark, there was no evidence that these customers had been the exclusive customers of Hallmark.

Mr. Leonard Buxkemper, the president of Hallmark, testified that both employees and applicants may be listed with a number of employment agencies at a given time. He testified that he had developed an analysis technique known as "features, benefits and needs", which was based upon his years of experience in the employment counseling business. He testified that he had personally taught this technique to Franks, that he had disclosed the information in confidence, and that he had not reduced to writing the information concerning such technique. He testified that he had "expounded" on the theory of his technique at national committee meetings, but had not disclosed "the finer details on it". It was the "actual details" which made the information valuable to a competitor. When asked what was secret about his technique, he testified that the secret was learning how to interpret and apply the information contained on the applicant's card.

■ A trade secret may consist of any formula, pattern, device or combination of information used in one's business which gives one an opportunity to obtain an advantage over competitors who do not know or use it. *Brown v. Fowler,* 316 S.W.2d 111 (Tex.Civ.App.—Fort Worth 1958, writ ref'd n. r. e.). Where one breaches a confidential relationship in order to unfairly use the trade secret of his employer, injunctive relief is appropriate to prevent the disclosure of confidential information which the employer maintained as a trade secret. *Thermotics, Inc. v. Bat-Jac Tool Co.,* 541 S.W.2d 255 (Tex.Civ.App.—Houston [1st Dist.]

1976, no writ); *Hyde Corp. v. Huffines,* 158 Tex. 566, 314 S.W.2d 763 (1958). However, in order to be entitled to such protection, the employer must show that the information was, in fact, a trade secret. *Thermotics, Inc. v. Bat-Jac Tool Co.,* supra.

The testimony of Hallmark's president shows only that the "finer details" of the applicant's analysis technique were considered secret and that the general principles of the technique had been made known to the industry in general. There was no evidence indicating that any information was considered secret other than the "finer details" of a method for interpreting and evaluating the applicant's card. The trial court could have concluded from the evidence that this analysis technique was a subjective skill which could be developed by any experienced employment counselor having knowledge of the general principles of the concept. Indeed, Mr. Buxkemper's testimony indicated that a person who had heard his national speech might be able to develop and implement the principles of his technique as effectively as he had.

Matters of general knowledge in an industry cannot be appropriated by one as a trade secret. *Wissman v. Boucher,* 150 Tex. 326, 240 S.W.2d 278 (1951). The efficiency and skills which an employee develops through his work belong to him and not to his former employer, and the employee is not obligated to forego the exercise of his inventive powers even if his expertise was gained in the performance of his contractual duties. *Welex Jet Services, Inc. v. Owen,* 325 S.W.2d 856 (Tex.Civ.App.—Fort Worth 1959, writ ref'd n. r. e.). The evidence in this case does not compel the conclusion that Franks gained knowledge or information during the course of his employment which should be protected as a trade secret.

Neither does the evidence establish what harm, if any, Hallmark would sustain by reason of Franks' use of the "features, benefits and needs" technology in his own employment agency. Although Mr. Buxkemper concluded that Hallmark would be injured by Franks' use of such technique, he admitted that he had made no investigation to determine whether Hallmark's business

had, in fact, been harmed. Nor does the evidence indicate whether Franks had actually disclosed or made use of the "features, benefits and needs" technique in his own business. A writ of injunction should not issue on a mere surmise of injury. *Camp v. Shannon,* 162 Tex. 515, 348 S.W.2d 517 (1961).

 A judgment granting or denying a temporary injunction will not be reversed unless the appellate court is convinced that the trial court's ruling constitutes a clear abuse of discretion. *Sun Oil Company v. Whitaker,* 424 S.W.2d 216 (Tex. 1968). On the basis of the record before this court, it cannot be said that the trial court abused its discretion in denying Hallmark's application for a temporary injunction.

The trial court's order denying the application for a temporary injunction is affirmed.