**READING & BATES CONSTRUCTION CO., Appellant,**

v.

**Hugh W. O'DONNELL, et al., Appellees.**

**No. 2368.**

Court of Appeals of Texas, Corpus Christi.

Jan. 7, 1982.

Ned L. Conley and David M. Ostfeld, Houston, for appellant.

John F. Lynch, Charles H. de la Garza and James J. Elacqua, Houston, for appellees.

Before NYE, C. J., and UTTER, and KENNEDY, JJ.

## OPINION

UTTER, Justice.

This is an interlocutory appeal from an order of the trial court granting only part of the relief requested by the plaintiff-appellant, Reading & Bates Construction Co., against defendants, Hugh W. O'Donnell, Donald Harden, Baker Energy Resources Co. and Baker Marine Corp. (hereinafter O'Donnell, Harden, Baker and Baker Marine, respectively, or appellees, collectively). All parties have appealed the trial court's order temporarily enjoining O'Donnell and Harden from using or disclosing certain specified information. Appellant appeals on grounds that the temporary injunction which issued was not far reaching enough; O'Donnell and Harden on grounds that no injunction was proper under the circumstances.

The facts pertaining to this cause of action are basically simple in nature. Reading & Bates' predecessor, Titan Contractors (hereinafter called Titan), pioneered the technique of horizontal directionally drilled crossings whereby rivers and other natural and man-made obstructions could be circumvented by drilling an arcuate hole beginning on one side of the obstacle and surfacing on the other. This technique was particularly useful for laying pipe and cable and similar items under such bodies. Although other methods existed such as dredging and bridging, this technique was apparently the least objectionable for a variety of reasons.

As is often the case in new technological developments, Titan expended large sums of money and time in developing its technique on largely a trial and error basis. Due to its need for an engineer knowledgable in the area of standard river crossings, Titan employed Harden in 1975 as general field superintendent and subsequently hired O'Donnell as vice president of engineering.

In 1979, Reading & Bates acquired all of Titan's assets for a substantial sum of money. Both Harden and O'Donnell, in addition to many other Titan employees, were retained in positions similar to those which they had held with Titan. Harden and O'Donnell were discharged by Reading & Bates in June and October of 1979 respectively. Thereafter, Harden and O'Donnell contacted Baker Marine concerning the prospects of incorporating a business to engage in horizontal directionally controlled drilling. Baker Marine was receptive to the idea and thereafter Baker was formed for that purpose.

Being the only concern in the United States to perform successfully horizontal directionally controlled drilled crossings, Reading & Bates immediately filed suit for a temporary injunction, permanent injunction and damages. From April 15, 1981 until May 1, 1981 testimony was heard on the Plaintiff's application for temporary injunction which resulted in the trial court enjoining O'Donnell from disclosing certain costs, bid and timefactor information learned while at Reading & Bates and Titan. Harden was similarly enjoined with the added proviso that he be enjoined from utilizing certain drawings and plans which were compiled by Reading & Bates.

Appellant's first three points of error begin: the trial court erred as a matter of law in concluding that it did not have the power to: 1) grant an injunction which would prevent Harden and O'Donnell from engaging in the business of horizontal directionally controlled drilled river crossings, 2) enjoin appellees from using or disclosing Reading & Bates' process for preparing horizontal directionally controlled drilled river crossings, 3) grant an injunction which would prevent Harden from using information which he learned from Reading & Bates and its predecessor, which resulted from experience.

These points of error obviously are directed at the trial court's reasoning for refusing to grant portions of the temporary injunction which appellant requested. Appellant did not request or file findings of facts and conclusions of law pursuant to Rule 296 T.R.C.P. As this Court has previously stat-

ed in *United Farm Workers, AFL–CIO v. H. E. Butt Grocery Co.*, 590 S.W.2d 600 (Tex.Civ.App.—Corpus Christi 1979, no writ):

> "Where findings of fact or conclusions of law are not filed the trial court's judgment must be upheld on any legal theory supported by the record." *Davis v. Huey*, 571 S.W.2d 859 (Tex.1978); *Seaman v. Seaman*, 425 S.W.2d 339 (Tex.1968)."

Basically appellant's points one and five complain that the trial court erred in not enjoining the appellees from competing with appellant in the general business of horizontal directionally controlled drilled river crossings. It is important at the outset to emphasize the fact that neither Harden nor O'Donnell, insofar as the record is concerned, were restricted in competing with the appellant by any type of restrictive contract or agreement not to compete. Obviously Baker and Baker Marine were not so restricted nor does the evidence disclose any confidential relationship between appellant and Baker or Baker Marine in their past dealings.

■ Insofar as O'Donnell and Harden are concerned the record reflects that O'Donnell had considerable and significant experience in the river crossing business acquired by reason of his employment with employers prior to his working for Titan. After Titan was acquired by the appellant, O'Donnell continued in the marketing position which he held with appellant's predecessor Titan. Harden had worked as a field superintendent for Titan overseeing work in progress. Prior to working for Titan, Harden had acquired considerable experience in the placement of pipe under obstacles by various techniques. When Titan was acquired by appellant, Harden like O'Donnell also renegotiated the terms of his employment. Baker and Baker Marine had no prior contacts with appellant in any business relationship. They had not engaged in the business of horizontal directionally controlled drilling prior to their contact by O'Donnell and Harden to enter into such business. There is no contention by appellant, nor is there any evidence in the record

that either O'Donnell or Harden did any wrongful acts, nor were they encouraged by Baker and Baker Marine to leave their employment with appellant and set up a competing business. In addition to enjoining Harden and O'Donnell from divulging any trade secrets, the trial court allowed a representative of the court at appellant's insistence and expense to go upon the business premises of Baker and Baker Marine, without prior announcements, to ascertain whether or not appellees are complying fully with the court's order. The trial court obviously thought that these permitted periodic inspections would sufficiently act as a safeguard to protect appellant from the use of any trade secrets by appellees. Appellant cites various cases where much broader injunctions were upheld by the Appellate Courts of Texas. However, the fact that the trial judge could have issued a much broader injunction than he did does not imply that he abused his discretion. *Electronic Data Systems Corp. v. Powell*, 508 S.W.2d 137 (Tex.Civ.App.—Dallas 1974, no writ), *Orkin Exterminating Company, Inc. v. Wilson*, 501 S.W.2d 408 (Tex.Civ.App.—Tyler 1973, writ dism'd). Appellant's first and fifth points of error are overruled.

Appellant's second and third points of error complain basically that the trial court abused its discretion in determining what it considered to be trade secrets as compared to knowledge gained through experience.

■ The case law is clear that, even in the absence of an employment contract prohibiting competition or disclosure, a former employee may not breach a confidential relationship and disclose trade secrets. *Crouch v. Swing Machinery Co.*, 468 S.W.2d 604 (Tex.Civ.App.—San Antonio 1971, no writ); *Weed Eater, Inc. v. Dowling*, 562 S.W.2d 898 (Tex.Civ.App.—Houston [1st District] 1978, writ ref'd, n. r. e.). In the case where the employee will naturally acquire trade secrets in the course of his employment the law may even permit greater restrictions than those usually required. *Weed Eater, Inc. v. Dowling, supra.* In any event an employee is prohibited from using trade secrets to the detri-

ment of the one who taught such secrets to him. *Johnston v. American Speedreading Academy, Inc.*, 526 S.W.2d 163 (Tex.Civ. App.—Dallas 1978, no writ).

■■ However, a former employee may use in later employment or venture the general skills, knowledge and experience which he has acquired. *Hallmark Personnel of Texas, Inc. v. Franks*, 562 S.W.2d 933 (Tex.Civ.App.—Houston [1st District] 1978, no writ). This is true even if the former employment has acted to increase his skills and if such training is complex and extensive. *Kidde Sales and Service, Inc. v. Peairson*, 493 S.W.2d 326 (Tex.Civ.App.—Houston [1st District] 1973, no writ). Finally, matters of general knowledge are not trade secrets and cannot be transformed into trade secrets by acquiring or collecting them in a certain fashion. *Hallmark Personnel of Texas, Inc. v. Franks, supra; Crouch v. Swing Machinery Co., supra.*

The trial of this case on the temporary injunction took approximately two weeks and the testimony from the appellant and appellees elicited during the trial showed that many of the facts and circumstances were highly disputed. Appellant alleged many items of so-called trade secrets which were shown to be matters of common knowledge and in use in the industry by appellees. The record reflects that the trial court carefully examined all of the exhibits and other materials submitted by appellant. In its order, the trial court specifically set forth those matters which the trial court determined were trade secrets. The trial court specifically restrained O'Donnell and Harden from engaging in the practice or dissemination of such information. The record further reflects that the trial court was extremely careful in ascertaining which matters were relegated to a category of being obtained by knowledge and experience as opposed to being trade secrets.

■ In following the rationale and the law as set forth in *Hallmark Personnel of Texas, Inc. v. Franks, supra; Johnston v. American Speedreading Academy, Inc., supra*; and *Kidde Sales and Service, Inc. v. Peairson, supra*, the trial court carefully

delineated those particular items and granted to the appellant an injunction on those matters which the trial court felt were trade secrets. No abuse of the trial court's discretion is shown. *Transport Co. of Texas v. Robertson Transports*, 152 Tex. 551, 261 S.W.2d 549 (1953). Appellant's second and third points of error are overruled.

■ In its fourth point of error, appellant claims that the trial court abused its discretion in failing to enjoin Harden from disclosing information which was not public at the time it was disclosed to him. While the general rule as herein set out is that a trade secret cannot be a matter of general knowledge or common knowledge within the trade, there does exist an exception where the information is secret at the time acquired by the employee and then later made public. *Atlas Bradford Co. v. Tuboscope Co.*, 378 S.W.2d 147 (Tex.Civ.App.— Waco 1964, no writ). The trial court more extensively enjoined Harden than O'Donnell in that the trial court prohibited Harden from utilizing or disclosing a multitude of drawings and plans. A careful review of the record leads to the conclusion that the trial court did not abuse its discretion in failing to enjoin Harden's use of the information any more than it did. In fact, the record indicates that the trial judge used the *Atlas Bradford* rationale in reaching his decision. Such other matters could easily have come from Harden's experience or been common in the industry prior to disclosure to Harden. No abuse of discretion being found, appellant's fourth point of error is overruled.

■ Harden and O'Donnell's first cross-point of error complains of the fact that they were not afforded an opportunity to present a "case-in-chief" at the hearing on the temporary injunction. The notice requirements of Rule 681 T.R.C.P. require that an adverse party in a temporary injunction setting have a right to be heard. *Gibson v. Shaver*, 434 S.W.2d 462 (Tex.Civ. App.—Tyler 1968, no writ); *City of Austin v. Texas Public Employees Assoc.*, 528 S.W.2d 637 (Tex.Civ.App.—Austin 1975, no

writ). Such opportunity to be heard must amount to more than the mere right to cross-examine the other party's witnesses. See *Oertel v. Gulf States Abrasive Mfg., Inc.*, 429 S.W.2d 623 (Tex.Civ.App.—Tyler 1968, no writ). However, in a hearing on a temporary injunction, the judge is entitled to reasonably limit the proceedings. *City of Houston v. Houston Lighting & Power Co.*, 530 S.W.2d 866 (Tex.Civ.App.—Houston [14th District] 1975, writ ref'd n. r. e.). In fact, this Court has recently held that it was not an abuse of discretion to grant a temporary injunction based on stipulated facts and argument thereon together with summarizations of other expected evidence on both sides. *Birds Construction, Inc. v. Gonzalez*, 595 S.W.2d 926 (Tex.Civ.App.— Corpus Christi 1981, no writ).

In reviewing the trial court's action in the instant case, this Court is to indulge all legitimate inferences from the evidence presented in the trial court in the light most favorable to the trial court's decision. *Diesel Inj. Sales & Service, Inc. v. Renfro*, 619 S.W.2d 20 (Tex.Civ.App.—Corpus Christi 1981, no writ). A review of the record in this case indicates that after an extensive presentation of evidence in the appellant's case, the court engaged in a discussion with both counsel, the parties to the action and several witnesses in an effort to determine what was, in fact, a trade secret. Appellees' counsel acquiesced in this determination and indeed participated in and approved the vast majority of the items listed as trade secrets. At the conclusion of this exhaustive review of appellant's contentions, appellees' counsel pointed out to the court that the final form of the order had not yet been reached but that he and appellant's counsel would work it out if at all possible. These remarks immediately followed:

"Mr. Lynch (Defense counsel): And on the 11th, Your Honor, I would also like the freedom to finish my case, just—I would submit it in writing, or orally, what I could do from here on out. I've got a number of witnesses.

The Court: I have a three-week jury case starting May the 11th, 1:30.

Mr. Lynch: I'm talking about in writing. If you will let me complete the record in writing.

The Court: Surely."

The record in this case clearly indicates that appellees' attorney volunteered to submit any additional matters he wanted considered in writing after lengthy negotiations with the court and opposing counsel on what would be an appropriate injunction in this case. This Court has already recognized the propriety of accepting summary submissions in certain situations. *Birds Construction, Inc. v. Gonzalez, supra.* Appellees cannot now be heard to complain that they were denied the opportunity to be heard particularly in view of the fact that they did not even avail themselves of the opportunity to present any evidence in summary form.

Appellees' first cross-point of error is overruled.

In their second cross-point of error appellees contend that there was no evidence to warrant the conclusion that the drawings and plans which the court enjoined Harden from using or disclosing were, in fact, trade secrets. If there is some evidence of probative character then we must uphold the trial court's decision not to be an abuse of discretion. *Matuszak v. Houston Oilers, Inc.*, 515 S.W.2d 725 (Tex.Civ.App.—Houston [14th District] 1974, no writ). In reviewing a no evidence point, this Court must consider only the evidence and inferences thereon tending to support the finding in question and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Salazar v. Hill*, 551 S.W.2d 518 (Tex.Civ.App.—Corpus Christi 1977, no writ). Appellees particularly complain of the list in the injunction which specified the drawings that Harden would be precluded from using or disclosing because the drawings listed therein were presented in sketch form only at the hearing. The record indicates this list came about as the result of the extended discussion between counsel, the parties and the court. The record re-

flects that there was evidence by which the trial court could determine such items were trade secrets. Further, the record indicates that many of these drawings, which were more accurate than the sketches made at the hearing, were requested by defense counsel:

> "Mr. Lynch: Those are sketches, Your Honor. That's what I would like to—I would like to have something definite. Mr. Cherrington made a sketch of this reamer. Now we have—
>
> The Court: (To Plaintiff's counsel) Have you got some blueprints?
>
> Mr. Conely: (Plaintiff's counsel) I will have it."

The court subsequently applied this request to all drawings and plans which it enjoined Harden from using or disclosing. There is no record of any objection lodged to the inclusion of these more definitive drawings when they were entered in the Order of May 11, 1981. Accordingly, appellees' second cross-point of error is overruled.

In their final cross-point of error, appellees allege that the trial judge erred as a matter of law in enjoining them from using knowledge already in the "public domain". Under this contention appellees are necessarily claiming that the trial court erroneously applied the law to the undisputed facts at hand. *City of Spring Valley v. Southwestern Bell Telephone Co.*, 484 S.W.2d 579 (Tex.1972). The appellees do not contest the fact that the information complained of was not public prior to disclosure to O'Donnell or Harden, but only that the trial court erroneously applied the law in holding that information so acquired could not later be used. In *Atlas Bradford Co. v. Tuboscope Co.*, 378 S.W.2d 147 (Tex. Civ.App.—Waco 1964, no writ) the Court held that information confided in secret to an employee would prohibit the employee from disclosing the information due to the character of the information at the time it was imparted to the employee even though such information later becomes public. Appellees argue that the *Atlas Bradford* case reaches a bad result and urge this Court to follow instead the rationale of *Lamons Met-*

*al Gasket Co. v. Traylor*, 361 S.W.2d 211 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.) wherein information was found not to be secret at the time the employee acquired it. We find no conflict between the two cases due to the Court's finding in *Lamons Metal Gasket Co. v. Traylor* that the information was not in fact a secret. The trial judge correctly applied the *Atlas Bradford* case to the situation at hand and thus we find no abuse of discretion.

During oral argument, we asked counsel for both parties how soon the case could be tried on the merits. Both parties agreed to expedite pretrial matter. We advanced this case for oral argument on our own motion and expedited the decision of the appeal. Because of the importance of the subject matter to all parties involved, we recommend to the trial court that a very early trial setting be had.

The judgment of the trial court is affirmed.