Gustavo **GONZALES** and Leonor Garcia, a General Partnership, d/b/a Third Party Medical Resources, Appellants,

v.

Humberto **ZAMORA**, d/b/a Texas Aires Medical Social Services, Third Party Medical Resources, Inc., and Medical Third Party Resources, Appellee.

No. 13–88–623–CV.

Court of Appeals of Texas, Corpus Christi.

May 24, 1990.

William R. Kendall, Jr., Kleberg & Head, Corpus Christi, for appellants.

J.A. Magallanes, Brownsville, for appellee.

Before NYE, C.J., and BENAVIDES and SEERDEN, JJ.

## OPINION

BENAVIDES, Justice.

Humberto Zamora brought suit against former employees Gustavo Gonzales and Leonor Garcia for damages and injunctive relief, asserting four causes of action: (1) breach of a nondisclosure contract, (2) conversion óf property, (3) civil conspiracy, breach of confidential relationship and unfair competition, and (4) malicious interference with contracts. Gonzales and Garcia counterclaimed, alleging that Zamora maliciously and wrongfully filed a temporary restraining order interfering with contracts that Gonzales and Garcia had with third parties causing them to lose wages and income. The trial court granted an instructed verdict in favor of Zamora on the counterclaim. With respect to Zamora's claims, the jury found for Zamora and awarded him damages of $175,000.00. The trial court entered a judgment awarding damages and attorney's fees to Zamora and a permanent injunction against Gonzales and Garcia. The appellants specify that they appeal only the granting of the injunction. Zamora does not reply. We modify the injunction and affirm the judgment of the trial court in all other parts.

By their first three points of error, appellants challenge the legal and factual sufficiency of the evidence to support both the submission of a jury question and the jury's finding that procedures and forms Zamora used in his business was a trade secret and the definition of "trade secret" contained in jury question number one. Appellants' points of error four through eleven challenge the legal and factual sufficiency of various jury findings which were contingent upon whether a trade secret in fact existed. By their twelfth point of error, appellants claim that the injunction the trial court entered is void as a matter of law. Appellants' final three points of error challenge the directed verdict in favor of Zamora and assert that certain jury questions regarding wrongful injunction should have been submitted.

## I. FACTS

While working on his Ph.D. at the University of Texas, Humberto Zamora discovered that a number of indigent individuals were not receiving various forms of State funded financial aid for medical services for which they were qualified. Zamora spent three years researching means to allay this situation. Subsequently, Zamora

founded Texas Aires Medical Social Services (Aires), another appellee, which served to coordinate medical patients, their hospitals or health care providers, and the Texas Department of Human Services (TDHS), the only State-run department which could determine indigent eligibility for financial relief. In exchange for arranging the State's payment of the medical expenses of qualified indigents, those hospitals and health care providers who received payment would pay Aires a percentage of the funds received.

In order for Aires to assist an indigent patient, necessary information about the patient needed to be provided to the State. Additionally, certain information needed to be exchanged between the State and the health care provider. To facilitate the exchange of information between the entities involved, Zamora worked with TDHS to develop several forms. Although the information could be gleaned from manuals the State created which are available to the public, Zamora created his forms from his own research.

Initially, a patient release form which allowed TDHS to release information to Aires was created. The State subsequently rejected this form, and Zamora spent three months and took several trips to Austin in order to develop a revised form. The State accepted the second or revised form, which is still used.

By Spring, 1987, the State determined that Aires needed to be authorized by the health care provider it was servicing. To meet this end, Zamora created a form for assignment of authority between the health care provider and Aires. This assignment of authority designated Aires as the agent of the health care provider such that Aires could get information about a patient otherwise available only to the health care provider. According to Zamora, he spent six months on this form, and made four significant revisions before creating an acceptable form. Zamora documented his research and the numerous meetings involving him, his employees and the State. The assignment of authority form was unique to Aires and the form contained a clause which prohibited competitors from using it; none of Zamora's competitors had this form and they were precluded from using it.

Aires' employees officed in the various hospitals that used Aires' services. The employees used procedures and concepts for dealing with the patients and for following the patients' requests which were developed by Zamora and by themselves through their employment with Aires. According to Zamora, these procedures and concepts were not available to the general public through books or manuals.

Additionally, Zamora initiated the development of a computer program which traced the progress of an indigent's request for financial aid through the maze of State bureaucracy. Input for this program came from Zamora's employees at the numerous hospitals who outlined their particular needs such that the program would be sufficient for all health care facilities. Although an independent computer programmer primarily developed the program, Gustavo Gonzales, Aires' supervisor in Corpus Christi, worked with the programmer to insure that company needs were met. Upon completion, this program was put to use in the hospitals that Aires serviced. Like Aires' other materials, this computer program was not available to Zamora's competition. Further, this program was protected by a non-disclosure contract signed by Gonzales on behalf of Aires.

Gustavo Gonzales, one of the appellants, was hired by Zamora to work at Aires in 1984. Gonzales' prior work as a hospital financial counselor was not comparable to this job with Aires except that he was familiar with the medical vocabulary. In mid-1985, Gonzales was transferred to Corpus Christi to set up and run Aires' office at Memorial Medical Center. At this time, Aires was providing the only service of this sort in the city.

Not long after Aires started at Memorial, Gonzales hired one of Memorial's financial eligibility officers, Leonor Garcia. Garcia, another appellant, was more experienced than Gonzales was initially, but had not used any forms like the ones developed by

Aires, nor was she familiar with the forms. As Aires expanded to service more hospitals and health care providers in the Corpus Christi areas, Garcia and Gonzales each became supervisors of the Aires operations in several hospitals, and were placed in positions of confidence within the company. At that time, Gonzales was also the regional director for Aires.

In late 1986, one of Aires' employees quit, took some of the manuals and forms with him, and went into business for himself. The first doctor this individual approached recognized the forms, assumed that Aires was involved and contacted them. Zamora retrieved his forms and the individual went out of business.

Immediately thereafter, Zamora drafted a non-competition and non-disclosure contract for his employees to sign. This contract prohibited employees of Aires from using Aires' forms and procedures upon leaving the company for ten years after leaving. The purposes of the contract were to protect Zamora's forms and procedures, to prevent people from coming in and taking Zamora's work, and to protect Zamora's and Aires' reputations.

Gonzales was responsible for seeing that all Corpus Christi employees of Aries signed this contract. Initially, signing the contract was optional and none of the Corpus Christi employees signed. When Zamora found out that Gonzales had not gotten any signatures from the Corpus Christi employees, he made signing the contract mandatory. Subsequently, all Corpus Christi employees except Gonzales, signed in December, 1986. The parties disputed whether Garcia signed the contract, but in any event, no contract with her signature on it was in her personnel file. Both Gonzales and Garcia read the contract and understood Zamora's desire for confidentiality.

During the summer of 1987, Gonzales and Garcia became disenchanted with Aires and Zamora and decided to quit and form their own company in competition with Aires. In mid-September, 1987, they formed a business partnership and registered the name of Third Party Medical Resources (TPMR), another appellant. Both Gonzales and Garcia continued to work for Aires through the month of October. Gonzales quit, saying he was going to pursue a career in music, and Garcia quit, saying she was going to work with a family member.

Zamora did not find out that Gonzales and Garcia were competing with him until he received a termination letter from one of the hospitals which Aires serviced which stated that it had contracted with a less expensive company. A TDHS employee later contacted by Zamora questioning him about Gonzales' use of an Aires form. Zamora indicated to TDHS that this was done without his permission.

The forms that Gonzales and Garcia used for TPMR had essentially the same format and contents as those forms Zamora developed, except that the new forms had corrected misspellings, minor changes in insignificant vocabulary, and the name of the new company, TPMR, on them. Gonzales and Garcia said they did not take the forms from Aires and copy them, but one of the Aires' employees, David Hernandez, testified to the contrary. Hernandez stated that he saw Gonzales take one of the forms from Aires. Gonzales, however, said the he simply reproduced most of the forms verbatim from memory. Garcia admitted to having one of the form contracts at her home and to taking that contract to her lawyer for him to reproduce with TPMR on it. Both Gonzales and Garcia acknowledged the similarity between their forms and Aries'.

Henry Cantu with TDHS stated that Gonzales contacted him to find out what was needed to get information from TDHS. Cantu testified that he told Gonzales that he would need a client release form and documentation from the hospital allowing TPMR to act as the hospital's agent. The documentation could be either an assignment of authority or a letter from the hospital giving TPMR permission to act as the hospital's agent. Subsequently, TPMR began using forms that previously had been used exclusively by Aires, including the Aires assignment of authority form

which now contained a clause restricting its use to TPMR instead of Aires.

Cantu also testified that not all of Aires' procedures were contained in the TDHS manuals. He explained that the State's manuals only covered the procedures regarding the determination of an individual's eligibility for State funds. The procedures regarding reimbursement and the relationship between an agent and the hospitals were not in the manuals.

By 1987, Aires had various competitors in the State. When Zamora found out that Gonzales and Garcia had formed a new business like his, he was not concerned that they were new competitors. He was upset, however, that Gonzales and Garcia were using the forms which he developed without his permission. Zamora then filed this lawsuit.

## II. TRADE SECRET

Appellants raise three points of error regarding jury question number one, which asked the jury if the procedures and forms Plaintiff used was a trade secret. This issue was accompanied by the definition of trade secret.

By their first point of error appellants contend that the trial court erred in submitting jury question number one because there was no evidence to support its submission. By their second point of error appellants allege that the evidence is legally and factually insufficient to support the jury's finding in response to jury question number one. By their third point of error, appellants contend that the trial court erred in submitting the definition of "trade secret" contained in jury question number one.

### A. DEFINITION OF TRADE SECRET

Appellants objected at trial to the last sentence of the definition of trade secret and submitted their own definition of trade secret which included specifics regarding the secrecy of the material sought to be protected. At no time did appellants specify the grounds on which they were objecting to the last sentence, nor is any ground apparent in the record. The trial judge overruled both the objection to the definition and appellants' requested definition. Appellants raise their objection again on appeal in a point of error, and focus their argument in their brief on the need for secrecy as part of the explanation of trade secret. Appellants do not complain of the refusal to use their requested definition.

We begin our discussion with an analysis of the definition of trade secret. Question number one of the court's charge stated:

Do you find that the procedure and forms which Plaintiff Humberto Zamora, d/b/a Texas Aires Social Medical Services, uses in conducting his business is a trade secret?

After the question was the following definition of trade secret:

"Trade Secret" is defined as any formula, pattern, device, or compilation of information which is used in one's business, and which gives him an advantage over competitors who do not know or use it. It may be a formula to a chemical compound, a process of manufacturing, treating, or preserving materials, a pattern for a machine or other device, or a list of customers. It is not required to be novel or unique and it may consist of a combination of simple and otherwise known components, or it may be only an idea.

The jury answered "Yes" to this question.

The first part of the definition given to the jury is the same as the broad and imprecise definition of a trade secret that has been adopted by the Supreme Court of Texas and which is the definition contained in the Restatement of Torts, § 757, 5, Comment (b) (1939). *Hyde Corp. v. Huffines,* 158 Tex. 566, 314 S.W.2d 763, 769 (Tex. 1958), *cert. denied,* 358 U.S. 898, 79 S.Ct. 223, 3 L.Ed.2d 148 (1958); *Richardson & Assocs., Inc. v. Andrews,* 718 S.W.2d 833, 836 (Tex.App.—Houston [14th Dist.] 1986, no writit).

The first part of the last sentence in the definition in jury question number one is merely an explanation of how the requirements for a trade secret differ from the requirements for patentability. It is

error to consider novelty and uniqueness as conditions precedent to the existence of trade secrets. *Cataphote Corp. v. Hudson,* 422 F.2d 1290, 1293 (5th Cir.1970) (applying Texas trade secret law). Accordingly, it was not improper to instruct the jurors that novelty and uniqueness are not requirements for a trade secret.

■■■ The last clause of the last sentence in the definition of trade secret in the jury charge, that a trade secret "may be only an idea," was specifically referred to by appellee's attorney during his jury argument. "[T]he suggestion that one has a right to exclude others from the use of his trade secret because he has a right of property in the idea has been frequently advanced and rejected." Restatement, § 757 comment (a), 4; *see also Numed, Inc. v. McNutt,* 724 S.W.2d 432, 434–35 (Tex.App.—Fort Worth 1987, no writ) (general business activities not protectable); *Hallmark Personnel of Texas, Inc. v. Franks,* 562 S.W.2d 933, 936 (Tex.Civ. App.–Houston [1st Dist.] 1978, no writ) (a particular analysis technique was common knowledge in the industry and not protectable). We do not consider the statement that a trade secret may be only an idea to be a correct statement of the law. Nonetheless, we must reject appellants' point of error because the complaint is not properly before us.

Appellants' objection did not state the specific reason for objecting to the last sentence of the definition of trade secret and he must have done so in order to preserve error. Tex.R.App.P. 52(a); *see also Texas Gen. Indem. Co. v. Moreno,* 638 S.W.2d 908, 914 (Tex.App.—Houston [1st Dist.] 1982, no writ); *Southwestern Bell Tel. Co. v. Ramsey,* 542 S.W.2d 466, 476 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r. e.). Appellants' submission of a requested definition does not constitute a proper objection to the trial court's charge and does not preserve any error regarding the last sentence of the definition which was used. *Morris v. Estate of West,* 643 S.W.2d 204, 206 (Tex.App.—Eastland 1982, writ ref'd n.r.e.); *Schulz v. S. Union Gas Co.,* 617 S.W.2d 299, 302 (Tex.Civ.App.—Tyler 1981,

no writ). We overrule appellants' point of error number three.

**B. SUFFICIENCY OF THE EVIDENCE**

Appellants' first point of error challenges the legal sufficiency of the evidence to support the submission of jury question number one. By their second point of error, appellants challenge the legal and factual sufficiency of the evidence to support the jury's affirmative finding to jury question number one.

In considering a "no evidence," "insufficient evidence," or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established tests set forth in *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986); *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400 (Tex.1981); Calvert, No Evidence and Insufficient Evidence Points of Error, 38 Tex. L.Rev. 361 (1960).

■■■ As appellant points out, the key part of the definition of trade secret is secrecy. *See* Selinger, Protection of Proprietary Software: Evolving Needs for Legal Protection in the Modern–Day Business, 45 Tex.B.J. 11, 16 (1982). The word secret implies that the information is not generally known or readily available. *Richardson & Assocs., Inc.,* 718 S.W.2d at 837. However, when money and time are invested in the development of a procedure or device which is based on an idea which is not new to a particular industry, and when that certain procedure or device is not generally known, trade secret protection will exist. *K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv.,* 314 S.W.2d 782, 785 (Tex.1958); *Reading & Bates Constr. v. O'Donnell,* 627 S.W.2d 239, 241 (Tex.App. —Corpus Christi 1982, writ ref'd n.r.e.).

Additionally, Courts have refused to give trade secret protection when the material or procedure sought to be protected has been publicly disclosed. *See Hallmark,* 562 S.W.2d 933, 935; *Lamons Metal Gasket Co. v. Traylor,* 361 S.W.2d 211, 213 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.). Information generally known and readily available is not protectable, *Richardson & Assocs., Inc.,* 718 S.W.2d at 837

(customer list available from industry directories), but the fact that a trade secret can be discovered by experimentation and other lawful means does not deprive its owner of protection from those acquiring possession by unfair means. *Weed Eater, Inc. v. Dowling*, 562 S.W.2d 898, 901 (Tex. Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.).

■ When an effort is made to keep material important to a particular business from competitors, trade secret protection will be available. *See Furr's, Inc. v. United Specialty Advertising Co.*, 385 S.W.2d 456, 459 (Tex.Civ.App.—El Paso 1964, writ ref'd n.r.e.), *cert. denied*, 382 U.S. 824, 86 S.Ct. 59, 15 L.Ed.2d 71 (1964); Crone, The Departing Employee—Prevention of Competition and Protection of Trade Secrets, 50 Tex.Bar J. 372, 374–75 (1987). Protection is available even in the absence of an express agreement not to disclose materials; when a confidential relationship exists, the law will imply an agreement not to disclose trade secrets. *Hyde*, 314 S.W.2d at 763; *Reading & Bates*, 627 S.W.2d at 242. Additionally, although a trade secret generally cannot be a matter of common knowledge, there is an exception when the information is secret at the time acquired by an employee and then later becomes public. *Reading & Bates*, 627 S.W.2d at 243.

■ Appellants argue that a lack of secrecy prevents Zamora's forms and procedures from being trade secrets. Their position is that the requirements for Zamora's business forms are available to the public and are common knowledge through the State manuals. Appellants further argue that Zamora trained non-employees and that patients were entitled to copies of his forms, further making his forms available to the public. Finally, appellants claim that Zamora's forms are required by the State and that the State provided these forms.

In the instant case, the idea of coordinating indigents, health care providers and the State in order to obtain State funds for indigent medical expenses was a new idea. On the other hand, the necessity of forms to get information from the State and the need for authorization of authority from the health care providers was common knowledge and was not new. Zamora, however, spent a substantial amount of time and money developing forms which would exactly fit his needs and which would be acceptable by the State. He also spent time and money having a computer program developed which would facilitate his business procedures. This computer program was protected by a nondisclosure clause in the contract with the programmer.

During the time the forms and the computer program were being developed, Gonzales and Garcia were employed by Zamora in positions of confidence. Both employees were asked to sign nondisclosure agreements and were thus aware of Zamora's desire for confidentiality and his desire to prevent his competitors from using his forms and procedures.

Zamora did train a non-employee regarding the basics of his procedures so that she could help the small hospital at which she was employed. He also gave a workshop at a seminar which explained what Aries did. Zamora testified that any disclosures of his procedures and forms by himself to non-employees were limited and broad in nature. We do not view such limited disclosures as precluding a finding that the forms were trade secrets.

Additionally, Zamora's form for assignment of authority contained a clause restricting the use of the form to Aries. Gonzales put this exact clause in the assignment of authority agreement he created from memory and restricted the use of the form to his company.

Finally, contrary to what appellants claim, Zamora's forms were not specifically required by the State; the State would accept a letter from a health care provider appointing a company as its agent in lieu of a completed assignment of authority form. Further, again contrary to appellants' assertions, the forms were not provided by the State, but were provided by Aries for its own employees to use. There was no access to the forms except through Aries, nor was there any specific requirement for

the forms. Appellants did not acquire the forms from public sources but from Aires.

We find the evidence supported the submission of question number one to the jury and that the evidence is sufficient to support the jury's finding that Zamora's forms and procedures were a trade secret. We overrule appellants' points of error one and two.

By points of error four, six, eight, and ten, appellants further contend that the evidence was legally insufficient to warrant the submission of jury questions two, three, four, and fifteen. By points of error five, seven, nine, and eleven, appellants contend that the evidence was factually and legally insufficient to support the jury's affirmative responses to those questions. The jury found that Zamora disclosed trade secrets to Gonzales and Garcia during the course of their employment and that Gonzales and Garcia, in turn, disclosed or used Zamora's trade secrets. The jury further found that Gonzales' and Garcia's disclosure or use of Zamora's trade secrets was the proximate cause of damages to Zamora and that Zamora has suffered and will continue to suffer irreparable injury if Gonzales and Garcia continue to use and disclose Zamora's trade secrets.

Appellants did not object to the submission of jury questions two and fifteen. Appellants failed to preserve error on the legal sufficiency points related to these questions. Tex.R.App.P. 52(a). Hence, we overrule appellants' points of error four and ten.

Jury questions two, three, four, and fifteen are all dependent upon the finding that a trade secret did exist. Appellants do not specifically argue and brief these points but instead rely on their arguments and authorities brought under points of error one through three. As before, appellants argue that a lack of secrecy prevents Zamora's forms and procedures from being trade secrets.

The essence of Zamora's cause of action in trade secret appropriation against Gonzales and Garcia is a wrongful disregard of confidential relationships. *K & G Oil Tool & Serv. Co.*, 314 S.W.2d at 787. We deter-

mined that the jury was correct in finding that a trade secret did exist, and we review whether the evidence on jury questions two, three, four, and fifteen, is sufficient to establish that a breach of confidential relationships occurred.

Gonzales and Garcia were employed with Zamora during the time he developed his forms and procedures. Each testified that he or she had not seen these forms or forms of this sort before working with Zamora and that they learned of the forms from Zamora. Garcia specifically stated that she took one of the forms to her attorney for him to copy. Gonzales reproduced Zamora's exact forms from memory. There was evidence that these forms were the same as Zamora's with the exception of minor word changes and corrected misspellings.

Gonzales admitted going to the computer programmer who formulated the program for Aries, and requesting the same program for TPMR. The only reason Gonzales did not get the program was because he could not afford it at that time.

Zamora lost several hospital accounts because Gonzales and Garcia were undercutting his prices while using his forms. The use of Zamora's forms made it quick and easy for Gonzales and Garcia to go into business. The forms were recognized as Zamora's, however, and it was assumed that he was the only one using them such that he was contacted when problems associated with certain accounts arose. Zamora indicated that the reputation of his company was harmed by the existence of problems which he did not create. The use of forms by Gonzales and Garcia also implied that they were still associated with Zamora and Zamora was fearful of damage to his company's reputation as a result of any problems which Gonzales or Garcia may create.

We find that the evidence was sufficient to support the submission of jury questions three and four and to support the jury's findings on questions two, three, four, and fifteen. We overrule appellants' points of error five through nine, and eleven.

## III. TERMS OF THE INJUNCTION

Part of the judgment against appellants was a three year injunction preventing them from imparting, disclosing, and/or using for any purpose any information, procedures or materials, or any trade secrets acquired during the time they were employed with Zamora. Appellants were also enjoined from "interfering with and/or soliciting customers currently being serviced" by Zamora and from disparaging Zamora's reputation and business for purposes of interfering with Zamora's contractual relationship with his present and future customers. In support of this injunction, the court stated that Zamora had suffered and will continue to suffer irreparable injury unless Gonzales and Garcia are restrained.

By their twelfth point of error, appellants contend that the injunction entered by the trial court is void as a matter of law. Appellants specifically complain, however, of the extent to which the injunction includes material which may not be subject to trade secret protection, arguing that the scope of the injunction is beyond the basis for the injunction, as well as the subject matter legally subject to injunction. Appellants also complain that the injunction fails to meet the standards of definiteness, clearness, and conciseness as required by Tex.R.Civ.P. 683, and is therefore void for uncertainty and should be dissolved.

Appellants attack only two particular parts of the injunction as not describing in reasonable detail the act or acts sought to be restrained. The first part is that which prevents appellants from continuing to impart, disclose, or use for any purpose any information, procedures, or materials acquired during their employment with Zamora. Appellants claim that this includes material and information available from the State and from health care providers. The second part prevents appellants from continuing to interfere with or solicit customers currently being serviced by Zamora. Appellants claim that the only customers available are the health care providers and that this part of the injunction constitutes a non-competition requirement.

■ Every order granting an injunction shall be specific in terms and describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained. Tex.R.Civ.P. 683. A permanent injunction must not grant relief which is not prayed for, nor be more comprehensive or restrictive than justified by the pleadings, the evidence, and the usages of equity. *Morgan v. Morgan,* 657 S.W.2d 484, 494 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). Courts of Appeals have the power to modify judgments without remand to the trial court when it appears from the facts of the record that the modification is necessary and that the justice of the case requires it. *C.G.V. v. Texas Dep't of Human Resources,* 663 S.W.2d 871, 873 (Tex.App.— Beaumont 1983, no writ); Tex.R.App.P. 82. The injunction in this case is part of the final judgment and can be modified as necessary without remand.

■ A former employee can be enjoined from using or disclosing confidential information related to trade secrets which was acquired while he was an employee. *See Reading & Bates,* 627 S.W.2d at 243–44; *Weed Eater, Inc.,* 562 S.W.2d at 901–02. A former employee cannot be enjoined from using general knowledge. *Reading & Bates,* 627 S.W.2d at 244.

■ Throughout the trial the information, procedures and materials used at Aires were discussed and were repeatedly distinguished as being either confidential, and developed and assembled by Aires, or public and available to others from either the State or other sources. The injunction prohibits appellants from imparting, disclosing or using either the confidential information or the public information.

The pleadings and evidence support an injunction prohibiting appellants from imparting, disclosing or using confidential information, procedures and materials relating to Zamora's forms and computer program and their development, assembly, and use, which was acquired by appellants during their employment with Aires. The three year term of the injunction reflects the approximate amount of time that it

took Zamora to research and develop his trade secrets.

The record does not support an injunction prohibiting appellants from using information, procedures and materials available from and developed by the State or health care providers. Zamora's other competitors have access to these materials and the protection of Zamora's trade secrets does not extend to the protection of such matters developed by the State or health care providers.

Hence, part "A" of the injunction is modified to enjoin appellants from the following: Imparting, disclosing and/or using for any purpose any confidential information, procedures, or materials relating to plaintiff's trade secrets, in particular the forms and computer program, and their development, assembly, and use, which was acquired during the time GUSTAVO GONZALES AND LEONOR GARCIA, A GENERAL PARTNERSHIP D/B/A THIRD PARTY MEDICAL RESOURCES were employed by TEXAS AIRES MEDICAL SOCIAL SERVICES.

An employee, unless prohibited by contract, may, upon termination of employment, compete with his former employer. *Executive Tele–Communication Sys., Inc. v. Buchbaum*, 669 S.W.2d 400, 403 (Tex.App.—Dallas 1984, no writ). An employer is not entitled to an injunction preventing a former employee from soliciting employer's clientele as it existed on the day of employee's termination of employment, where there is no agreement not to compete. *Hart v. McCormack*, 746 S.W.2d 330 (Tex.App.—Beaumont 1988, writ dism'd w.o.j.). Although appellee's pleadings requested that appellants be enjoined from interfering with or soliciting customers currently serviced by Aires, he testified that he was not concerned with appellants' competition. Neither of the appellants signed an agreement to not compete with Aires. Therefore, they cannot be enjoined from soliciting Aires' customers or from legally interfering with Aires' customers in an effort to get their business. Section "C" of the injunction which enjoins appellants from "[i]nterfering with and/or soliciting

customers currently being serviced by Plaintiff" is deleted because it is an infringement of the right of appellants to compete. The remainder of the injunction is affirmed as written.

Appellants' remaining three points of error relate to the trial court's refusal to submit jury questions related to their counter-claims regarding the temporary injunction which had been obtained by appellee. In the preliminary statement of their brief, appellants expressly limited their appeal to the granting of the injunction which was a part of the trial court's final judgment, i.e., the permanent injunction. This statement is inconsistent with appellants' points of error regarding the temporary injunction and appellants' prayer requesting a remand for a new trial on the issues concerning the temporary injunction. We note that appellants did not file a brief in this case and that their failure to file a brief could have been due, in part, to reliance on appellants' initial express limitation of their appeal. Under such circumstance, we believe that appellants' points of error are not properly before us. Nevertheless, we have reviewed these points of error and reject them.

Appellants claim that because there were no trade secrets and no contract not to compete, there was no basis for an injunction, and that, therefore, the temporary injunction was wrongfully obtained. Trade secrets were involved, however, and trade secrets provide a proper basis for an injunction. *Hyde*, 314 S.W.2d at 780. Accordingly, appellants' points of error thirteen through fifteen are overruled.

The judgment of the trial court is MODIFIED with regard to the injunction, as discussed above, and AFFIRMED as to all other parts.