heading for memo 



No. 04-02-00589-CV


SOUTHWEST RESEARCH INSTITUTE & Mark E. Van Dyke,

Appellants


v.


KERAPLAST TECHNOLOGIES, LTD.,

Appellee


From the 285th Judicial District Court, Bexar County, Texas

Trial Court No. 2002-CI-09879

Honorable John J. Specia, Jr., Judge Presiding


Opinion by: Paul W. Green, Justice


Sitting: Phil Hardberger, Chief Justice (1)

 Paul W. Green, Justice

 Sarah B. Duncan, Justice


Delivered and Filed: January 8, 2003 


VACATED; APPEAL DISMISSED

 Appellants Southwest Research Institute (SWRI) and Dr. Mark E. Van Dyke bring
this accelerated appeal challenging two temporary injunctions broadly prohibiting SWRI and
Dr. Van Dyke from researching, publishing, or disseminating information related to the entire
field of keratin-based technology. We vacate the temporary injunctions and dismiss the
appeal. 

Background

 SWRI is a nonprofit research and development organization providing research,
engineering, and testing resources for businesses and government agencies. Over a period
of approximately ten years, Keraplast Technologies, Ltd. contracted with SWRI for SWRI
to undertake several keratin-based research projects. (2) From the results of these projects,
Keraplast hoped to obtain a number of patents for keratin and keratin-based products and
processes on which Keraplast could build its business. Each research project was detailed
by a separate contract describing the terms of the relationship and the scope of the research
to be performed. 

 In 2000, Keraplast and SWRI experienced a difference of opinion regarding the scope
of information that Keraplast claimed as its confidential and proprietary property. This
dispute was compromised when SWRI assigned two of its keratin-based patent applications
to Keraplast. However, SWRI thereafter declined to perform any further research projects
for Keraplast, and the contractual relationship was formally terminated on March 30, 2001.

 SWRI then began its own program of keratin-based research projects headed by Dr.
Van Dyke, who had previously performed much of the Keraplast research. SWRI and Dr.
Van Dyke claim they took extraordinary measures to ensure that SWRI's current projects are
not based on any confidential or proprietary information belonging to Keraplast. Keraplast
contends that Dr. Van Dyke's published and pending papers and speeches and SWRI's
patent applications and advertisements show SWRI is using for its own gain, and
disseminating to the public, trade secrets that belong to Keraplast.

 Keraplast filed suit to prevent SWRI's conduct and obtained two temporary
injunctions, prohibiting SWRI and Dr. Van Dyke, respectively, from "publishing,
disseminating, or communicating . . . any information regarding or relating to Keratin-based
technology . . ., including without limitation, presentations, interviews, papers,
advertisements, electronic or written communication or business inquiries. Keratin-based
technology is broadly defined as:

 any technology based on, or associated with technology based on, processed
keratinous material or tissue wherein during the processing of the keratinous
material the keratin is chemically modified


 The temporary injunction against SWRI also prohibits the following acts with respect
to keratin-based technology:

 (1) "file any patent application" in the United States or under the patent law
of any foreign country;

 (2) "initiate any tests or other research to be performed by third parties;" and

 (3) "make application for funding of research grants from or submit contract
research proposals to any private enterprise or government or public agency." 


The injunction order allows SWRI to pursue currently pending patent applications, to
continue current in-house research or projects already under contract with third parties, and
to continue pursuit of certain research grants and contract proposals already in progress.
SWRI and Dr. Van Dyke challenge the temporary injunctions as unwarranted, overbroad,
and a prior restraint on free speech. 

Standard of Review 

 We review the grant or denial of a temporary injunction for clear abuse of discretion
without addressing the merits of the underlying case. Walling v. Metcalfe, 863 S.W.2d 56,
58 (Tex. 1993); Ireland v. Franklin, 950 S.W.2d 155, 157 (Tex. App.-San Antonio 1997,
no writ). At the hearing for the temporary injunction, the applicant is not required to prove
that he will prevail at trial but must establish the right to preserve the status quo pending trial
on the merits by showing: (1) a probable right of recovery, (2) imminent, irreparable harm
in the interim, and (3) lack of an adequate remedy at law. Sun Oil Whittaker, 424 S.W.2d
216, 218 (Tex. 1968); Ireland, 950 S.W.2d at 157. We will draw all reasonable inferences
from the evidence in a manner most favorable to the trial court's judgment. Ireland, 950
S.W.2d at 157. The trial court does not abuse its discretion when it bases its decision
regarding the existence of a probable right and injury on conflicting evidence in the record. 
Id. (citing Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978)). 

 The improper use of trade secrets provides a proper basis for an injunction. Gonzales
v. Zamora, 791 S.W.2d 258, 268 (Tex. App.-Corpus Christi 1990, no writ). However, every
order granting an injunction must be specific in its terms and describe in reasonable detail
the act or acts to be restrained. Tex. R. Civ. P. 683; Gonzales, 791 S.W.2d at 267. In a case
involving trade secrets, the injunction must also be narrowly tailored to address the improper
use of confidential or proprietary information only. Id. at 268. Further, the injunction must
not be "framed so broadly as to prohibit the enjoyment of lawful rights." Kulkarni v.
Braeburn Valley West Civil Ass'n, 880 S.W.2d 277, 278 (Tex. App.-Houston [14th Dist.]
1994, no writ); see also Ex parte Tucci, 859 S.W.2d 1, 5-6 (Tex. 1993) (free speech "may
not be restricted solely on the grounds that its exercise will have the effect of producing
imminent and irreparable harm"). 

Discussion

 A trade secret is broadly defined as "any formula, pattern, device or compilation of
information which is used in one's business and presents an opportunity to obtain an
advantage over competitors who do not know or use it." Computer Assoc. Int'l, Inc. v. Altai,
Inc., 918 S.W.2d 453, 455 (Tex. 1996). Key to the definition of a trade secret is the element
of secrecy, implying that the information "is not generally known or readily ascertainable by
independent investigation." Rugen v. Interactive Bus. Sys., Inc., 864 S.W.2d 548, 552 (Tex.
App.-Dallas 1993, no writ). "When money and time are invested in the development of a
procedure or device which is based on an idea which is not new to a particular industry, and
when that certain procedure or device is not generally known, trade secret protection will
exist." Gonzales, 791 S.W.2d at 264. However, information generally known and readily
available is not protectable, and no trade secret protection is available when the material or
procedure at issue has been publicly disclosed. Id.

 Keratin is a protein found in human hair. It is undisputed that keratin research has
been conducted since the early '50s. Hundreds, if not thousands, of articles have been
written about its properties and possibilities. In particular, Australian research resulted in
the publication of what scientists refer to as the "keratin bible." Hundreds of patents for
keratin-based products exist in the United States and throughout the world. 

 The temporary injunction orders in this case contain such a broad definition of
keratin-based technology that, with certain limited exceptions, SWRI and Dr. Van Dyke are
effectively prohibited from carrying on or even discussing any keratin-based research that
involves the combination of keratin with other materials. SWRI and Dr. Van Dyke showed
that a large body of previously published information, including research papers and patents,
describes the combination or possible combination of keratin with other materials. Applied
literally, the injunctions would prevent SWRI and Dr. Van Dyke from researching or
discussing even this public information. Accordingly, the temporary injunctions improperly
grant trade secret protection to information that is not appropriate for such protection.

 Under proper circumstances, this court may modify an overly broad injunction rather
than vacating the trial court's order. T-N-T Motorsports, Inc. v. Hennessey Motorsports,
Inc., 965 S.W.2d 18, 25 (Tex. App.-Houston [1st Dist.] 1998, pet. dism'd). However, in this
case, Keraplast insisted that because Dr. Van Dyke and SWRI had no previous experience
with keratin research prior to the Keraplast projects, all the knowledge they obtained is
proprietary and confidential to Keraplast. (3) As a result, Keraplast failed to identify any
specific trade secret that should be protected. Therefore, on the record before us, we cannot
effectively narrow the temporary injunction orders.

Conclusion

 The trial court's temporary injunction orders are impermissibly overbroad because
they do not identify specific trade secrets and prohibit conduct related only to that
confidential and proprietary information. We vacate the temporary injunction orders issued
against Southwest Research Institute and Dr. Mark Van Dyke and dismiss the appeal.


 Paul W. Green, Justice

Publish



1. Hardberger, C. J., not participating.
2. Dr. Robert Allen Smith, the creative force behind Keraplast, first contracted with SWRI in 1992. He then
created Keraplast to carry on the business he believed would result from his initial ideas on keratin-based products.
3. The Texas courts have previously rejected this argument. A former employee may use the general knowledge,
skills, and experience acquired during employment to compete with a former employer. T-N-T Motorsports, 965 S.W.2d
at 22; Gonzales, 791 S.W.2d at 267; Numed, Inc, v. McNutt, 724 S.W.2d 432, 434 (Tex. App.-Fort Worth 1987, no
writ). In this case, Dr. Van Dyke was an experienced research scientist before he came to SWRI and began work on the
Keraplast contracts. Keraplast may not seek to prevent Dr. Van Dyke from applying his own preexisting experience, skills
and knowledge within the field of keratin-based research.





heading for memo 



March 5, 2003


No. 04-02-00589-CV


SOUTHWEST RESEARCH INSTITUTE & Mark E. Van Dyke,

Appellants


v.


KERAPLAST TECHNOLOGIES, LTD.,

Appellee


From the 285th Judicial District Court, Bexar County, Texas

Trial Court No. 2002-CI-09879

Honorable John J. Specia, Jr., Judge Presiding


ORDER CLARIFYING OPINION


 On February 4, 2003, Southwest Research Institute and Mark E. Van Dyke filed a
motion to clarify this court's opinion and judgment of January 8, 2003. Having considered
the motion and authorities cited therein, it is ORDERED that the motion is GRANTED. It
is further ORDERED that the opinion of January 8, 2003 is MODIFIED to state that the
temporary injunction orders issued against Southwest Research Institute and Dr. Mark Van
Dyke are vacated and the cause is remanded for further proceedings. It is further ORDERED
that the judgment of January 8, 2003 is WITHDRAWN. An amended judgment will be
issued. 


 It is so ORDERED March 5, 2003.

 

 Paul W. Green, Justice


 IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the
said Court on March 5, 2003.

 Herb Schaefer, Clerk