DAYTONA GROUP OF TEXAS, INC.,
d/b/a KRIX–FM and KRGE–AM,
Appellant,

v.

Betty Alice SMITH a/k/a Betty A.
Smith or Bertha Smith, Appellee.

No. 13–89–487–CV.

Court of Appeals of Texas,
Corpus Christi.

Nov. 15, 1990.

Rehearing Overruled Dec. 13, 1990.

R.W. Armstrong, R.W. Armstrong & Associates, Brownsville, for appellant.

John Haywood, Law Offices of John Haywood, P.C., Brownsville, for appellee.

Before NYE, C.J., and DORSEY and KEYS, JJ.

1. See appendix for the text of the covenant.

## OPINION

KEYS, Justice.

Appellant, Daytona Group of Texas, Inc., d/b/a KRIX–FM and KRGE–AM, sued to enforce a non-competition agreement it signed with appellee, Betty Smith, a former employee. The trial court ruled that the agreement was unenforceable and ruled in favor of appellee on her cross claims for damages. We affirm.

Appellee sold radio and newspaper advertising in the Valley from 1983 until May 1989. She worked for the Brownsville radio station KRIX–FM from June of 1986 until August 31, 1988. Her duties primarily involved direct sales to local businesses. Appellant purchased the station in January 1987. Several months after the purchase, Appellee signed a covenant[1] not to compete. This covenant was lost, and she signed another on December 3, 1987.

Appellee went to work for appellant's principal competitor, KBFM, on September 1, 1988, immediately after she stopped working for appellant. She became the sales manager for KBFM, and was engaged in selling radio advertising. Appellee's salary at her new job was significantly higher than at KRIX. She received a list of established clients to work with, and a 20% commission on new accounts.

While appellee worked for appellant she participated in a training program specifically designed to improve her ability to sell radio advertising. This program consisted of meetings using lectures, video tapes and other materials appellee purchased.

Six weeks after appellee began working for KBFM she was served with a TRO ordering her not to violate the covenant not to compete. She immediately stopped selling radio advertising, and worked as a receptionist. At a hearing for a temporary injunction on October 27, 1988, the TRO was dissolved and appellee returned to selling advertising. However, due to her new employer's concern over the ultimate outcome of this litigation, her client list was not returned, and she was forced to earn commissions solely on new business. Her

earnings fell significantly. As a result of the stress caused by this lawsuit she sought counseling. She left KBFM in May, 1989.

The trial was before the court. Appellee prevailed except that her request for a finding that appellant willfully and flagrantly violated Texas antitrust laws was denied. Findings of fact and conclusions of law were filed. The trial court entered judgment denying appellant's request for enforcement of the covenant and denying a permanent injunction. The court found in favor of appellee, and assessed damages at $16,500.00 and $25,175.00 in attorney's fees. Appellant raises four points of error.

■ By appellant's first two points of error, it challenges the trial court's ruling that the covenant not to compete was unenforceable. Currently, two separate but similar analyses are required to answer this question. First, we must determine whether the covenant not to compete violates common law principles. Second, we must determine whether the covenant is in conflict with Tex.Bus. & Com.Code Ann. §§ 15.50–51 (Vernon Supp.1990).

## Common Law Principles Governing Covenants Not to Compete

■ In determining whether this covenant not to compete is enforceable we rely on two recent[2] decisions by our Supreme Court. In *DeSantis v. Wackenhut*, 793 S.W.2d 670 (Tex.1990), and *Martin v. Credit Protection Ass'n, Inc.*, 793 S.W.2d 667 (Tex.1990), the Supreme Court of Texas analyzed this type of covenant in detail. A covenant not to compete is generally unenforceable on the grounds of public policy. Such a covenant will be enforced only if certain standards are met. Under *DeSantis* and *Martin*, the three requirements for an enforceable non-competition covenant are: 1) the covenant must be ancillary to a valid transaction or relationship; 2) the covenant must be necessary to protect the promisee's legitimate interests; and 3) the legitimate benefits of the covenant to the

promisee must not be outweighed by the hardship to the promisor or public injury. *DeSantis*, 793 S.W.2d at 681–82. In *DeSantis*, the court held that the covenant was not necessary to protect a legitimate business interest of the promisee, and it failed the balancing test of hardship to the promisor and injury to the public. In *Martin*, the court held the covenant was not ancillary to an otherwise enforceable agreement or supported by consideration.

## Sections 15.50–51.

■ Under §§ 15.50–51 the promisee (appellant here) must prove that the covenant is ancillary to an otherwise enforceable agreement and reasonable. If the agreement is entered into at a different time than the employment contract, independent consideration must be given. In addition, if the primary purpose of the ancillary agreement involves personal services, the promisee must prove that it contains certain reasonable limitations and does not impose restraint greater than that necessary to protect its legitimate business interests. § 15.51(b).

■ The statutory requirements under new §§ 15.50–51 are quite similar to the common law. The requirement in § 15.50(1) that the covenant not to compete be ancillary to an otherwise enforceable agreement is similar, if not identical to the common law requirement addressed in *Martin*. In addition, the covenant must be necessary to protect the legitimate business interests of the employer under both analyses. *Compare DeSantis*, 793 S.W.2d at 682, with § 15.50(2). Accordingly, these two issues will be the focus of our discussion.

The question we address first is whether the employment agreement is ancillary to an otherwise enforceable employment agreement. In *Martin*, a case factually similar to the instant case, the Court focussed on this requirement. The underlying agreement in *Martin* was "at will", i.e.,

---

**2.** These decisions, which altered the law in several significant respects, were handed down after this case was tried and briefs were filed.

it was not binding or enforceable on either party. The extent of the employment agreement was the non-competition agreement, and the covenant was signed after the promisor had been employed for three years. The employee would have been fired if he had not signed the agreement. The court concluded that the covenant was not ancillary to an enforceable agreement, and the covenant was not an otherwise enforceable agreement. *See also Justin Belt Co. v. Yost,* 502 S.W.2d 681, 684 (Tex. 1973) (noncompetition agreement signed in conjunction with settlement agreement was ancillary to an enforceable contract).

The instant case involves "at will" employment, and the extent of the employment agreement reflected in the record is the non-competition agreement. The non-competition agreement was signed after appellant bought out the old radio station. The evidence indicates that appellee would have been discharged if she had not signed the agreement.

■ The fact that the underlying employment agreement was an "at will" relationship and that the covenant was the extent of the agreement, persuades us that it was not an otherwise enforceable agreement. *Martin,* 793 S.W.2d at 699. Based on *Martin,* we hold that the covenant was not ancillary to an otherwise enforceable agreement and is therefore unenforceable under the common law and §§ 15.50–51.

The second question we address is whether the agreement was necessary to protect the promisee's legitimate business interests. This factor is significant under both the common law and § 15.50(2). In *DeSantis,* the court analyzed both the legitimate business interests of the employer and the hardship on the employee in order to determine whether the covenant not to compete would be enforced. The court held the non-competition agreement was not necessary to protect the employers' business interests of goodwill and confidentiality of information because there was no showing that the employee converted good-

will or took advantage of confidential information.

■ Under § 15.51(b), if the employment agreement involves personal services, such as sales, the burden is on the employer to prove that the covenant is necessary to protect its legitimate business interests. Under the common law, the employer must prove that the agreement was necessary. *Martin v. Linen Systems for Hospitals, Inc.,* 671 S.W.2d 706, 709 (Tex.App.—Houston [1st Dist.] 1984, no writ). The trial court in its findings of fact found that appellee did not solicit business from appellant's customers or divert advertising sales from appellant. It found as well that the training appellee received was not unique or special. There was no finding that appellee acquired any trade secrets. *See Bergman v. Norris of Houston,* 734 S.W.2d 673, 674 (Tex.1987); *see also Diesel Injection Sales & Servs. v. Renfro,* 656 S.W.2d 568, 572 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). She was not in a position to compete more effectively than other sales persons [3]. Although appellant claimed irreparable harm, no injury or risk of injury was shown.

Appellant did not identify how its legitimate business interests were or could be infringed by appellee's conduct. It did not carry its burden of proving that the agreement was necessary. We therefore hold that the covenant was not necessary to protect appellant's legitimate business interests. *DeSantis,* 793 S.W.2d at 683–84; § 15.50(2).

■ Appellant also argues that the trial court erred in not granting the permanent injunction. If the covenant is overbroad, a court of equity may enforce the agreement as reformed. *DeSantis,* 793 S.W.2d at 685; *Hill v. Mobile Auto Trim, Inc.,* 725 S.W.2d 168, 172 (Tex.1987). Section 15.51(c) provides:

If the covenant meets the criteria specified by Subdivision (1) of Section 15.50 of this code but does not meet the crite-

---

**3.** Indeed, appellant cannot claim its customer list was secret as anyone could obtain it simply by listening to the radio station.

ria specified by Subdivision (2) of Section 15.50, the court, at the request of the promisee, shall reform the covenant to the extent necessary to cause the covenant to meet the criteria specified ... Appellant waived any right to have the trial court reform the covenant and to enforce the permanent injunction under either theory by failing to so .request. Thus, the trial court did not err in refusing to modify the covenant and enter a permanent injunction. Moreover, reformation of the agreement is proper only where the covenant is necessary. In light of our holding above that the covenant was not necessary to protect the legitimate business interests of appellant, the covenant cannot be reformed. *DeSantis*, 793 S.W.2d at 685. Points of error one and two are overruled.

■ Appellant by its third point of error complains that the trial court erred in finding that the training appellee received from her employers failed to impart special training or knowledge. The evidence showed that the training program primarily consisted of video tapes and other aids which were purchased on the open market. This training program was not unique. Moreover, appellee's expert testified that he was familiar with many of appellant's training materials, and that the program did not encompass any novel or special training. The trial court did not err in finding that the training program did not impart any special knowledge to appellee. This case does not present the situation where a highly trained employee with unique skills leaves to compete with a former employer. *See Hartwell's Office World v. Systex Corp.*, 598 S.W.2d 636, 639 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). Appellant's third point of error is overruled.

■ By appellant's fourth point of error, it challenges the legal and factual sufficiency of the evidence to support the trial court's finding that appellee lost $16,-500.00 in sales commissions. A "no evidence" or "insufficient evidence" point is appropriate if the party without the burden of proof challenges a finding of fact. *Croucher v. Croucher*, 660 S.W.2d 55, 58

(Tex.1983). The scope of review for a no evidence point encompasses all the evidence and reasonable inferences which tend to support the finding of fact, and no other evidence. *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex.1990). The no evidence standard of review requires us to overrule the point if, viewing the evidence and inferences in the light most favorable to the finding, there is any evidence of probative force to support the finding. *Id.* On the other hand, the scope of review for an insufficient evidence point encompasses all the evidence which supports and contradicts the finding. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). The insufficient evidence standard requires us to sustain this point only if the evidence supporting the finding is so weak, or so against the great weight and preponderance of the evidence to be manifestly wrong and unjust. *Id.*

■ The evidence was sufficient under either standard to sustain the trial court's finding. When appellee moved to KBFM she was given an established client list generating 17.5% commissions, and she received 20% commissions on new accounts. The position paid approximately $3000.00 per month, depending upon sales. In the six weeks on the job prior to the day she was served with the temporary restraining order she was responsible for sales of $34,-908.64. After she was served with the TRO she worked from October 12, 1988, to October 27, 1988 as a receptionist. Thereafter she returned to sales without her client list. As a result she consistently failed to meet her sales goals. She worked without pay in May of 1989 and at the end of that month stopped working. Her losses were about $1600.00 per month, plus $3000.00 for the last month. This evidence is sufficient to support the trial court's finding that she lost $16,500.00 in commissions.

■ By appellee's sole cross point she argues that damages should be trebled because appellant's conduct was willful and flagrant. The trial court failed to find that appellant's conduct was willful and flagrant. *See* Tex.Bus. & Com.Code Ann.

§ 15.21(a)(1).[4] This court has jurisdiction to review on factual sufficiency grounds a trial court's failure to find facts. *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 649 (Tex.1988).

The burden of proof on the question whether appellant breached the willful and flagrant standard was on appellee. Thus the correct legal and factual sufficiency challenges are that the fact was established as a "matter of law" and the court's failure to find was "against the great weight and preponderance of the evidence". *Croucher,* 660 S.W.2d at 58; *see also Conrad v. Orellana,* 661 S.W.2d 309, 313 (Tex.App.—Corpus Christi 1983, no writ). The standard of review for a matter of law point requires a two pronged inquiry. First, the appellate court must review the evidence and inferences reasonably supporting the finding and view them in the light most favorable to the finding. Second, if there is no evidence supporting the finding, we must determine whether the contrary proposition is established as a matter of law. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). If a finding is "against the great weight and preponderance of the evidence" the inquiry is whether, after examining all the evidence, the finding is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cropper,* 754 S.W.2d at 650; *Hall v. Layton,* 16 Tex. 262, 270–71 (1856).

After reviewing the evidence as required by both standards, we find that appellee has not established as a matter of law or by the great weight of the evidence that appellant willfully and flagrantly violated § 15.05. We overrule appellee's sole cross point.

The judgment of the trial court is affirmed.

4. Sections 15.01–40 comprise the Texas Free Enterprise and Antitrust Act. In order to recover under this section appellee was required to establish that the covenant "has an adverse effect on competition in the relevant market." *DeSantis,* 793 S.W.2d at 688. Apparently, no court has ever done this. *Id.* Nevertheless, the trial court

APPENDIX

EXHIBIT A

THE DAYTONA GROUP OF TEXAS

KRIX–FM

AGREEMENT NOT TO COMPETE

I, Betty A. Smith, the undersigned employee of The Daytona Group of Texas, (hereinafter called company), as a condition of employment, hereby agree that for a period of twelve (12) months thereafter termination of my employment with the Company, regardless of reason, will not engage in or attempt to engage in any advertising or air time sales, promotion or marketing activity for any *radio* or *television broadcast* station (competing business), including, without limitation, having any ownership interest in, extending any loan to, operating, consulting for, or being employed by, any competing business within the counties of Cameron, Hidalgo, Willacy, Kennedy, Brooks, Starr, Jim Hogg & Zapata. I also agree not to disclose any trade secrets or trade practises of the Company. Further, I agree not to include, encourage, or attempt to induce or encourage any advertiser purchasing air time from the Company to purchase advertising from or to use any other radio or television broadcaster in the above counties for their advertising. Finally, I agree not to acquire any interest in or become employed by any current advertiser purchasing air time from the Company without the Company's prior written consent, which will not be unreasonably withheld.

I understand and agree that damages for my violation of this agreement cannot be determined and therefore I hereby agree and hereby submit to the imposition of an injunction against me to enforce the provisions of this agreement. I hereby agree to reimburse the Company for any and all attorney's fees, through any appeals, that

found for appellee on her "causes of action", which included a claim under this Act. This ground of recovery was not challenged on appeal and for that reason this part of the judgment must stand. *Fluellen v. Young,* 664 S.W.2d 776, 782 (Tex.App.—Corpus Christi 1983, no writ).

**292**

the Company may incur in its enforcement of this agreement.

Betty A. Smith

Signature

12/3/87

Date

Betty A. Smith

Name–Please Print

Subscribed and sworn before me this 3rd day of Dec., 1987

Gresilda M. Lopez

Notary Public

My Commission Expires 5/29/90