**Jeffrey GOMEZ and M.A.P.A., Inc., Appellants,**

**v.**

**Humberto ZAMORA, Individually, Texas Aries Medical Social Services, Appellee.**

No. 13–90–469–CV.

Court of Appeals of Texas, Corpus Christi.

June 18, 1991.

Rehearing Overruled Aug. 29, 1991.

David K. Watsky, Dallas, for appellants.

Hector J. Villarreal, Edinburg, Roger W. Hughes, Adams & Graham, Brendan Hall, Hall, Deane & McGowan, Harlingen, for appellee.

Before HINOJOSA, SEERDEN and DORSEY, JJ.

## OPINION

HINOJOSA, Justice.

This is an appeal from a temporary injunction prohibiting appellants, Medical Assistance Program Advisors (MAPA) and Jeffrey Gomez (Gomez) from competing with appellee, Texas Aries Medical Social Services (TAMSS) and Humberto Zamora. The basis for the injunction was a non-competition clause in an employment contract appellant Gomez signed. We reverse and dissolve the injunction.

Appellee, TAMSS, is in the business of assisting hospitals in recovering money for medical services provided to indigent patients.[1] The money is granted by governmental entities and other sources for this specific purpose. The services TAMSS furnishes are highly technical because each funding source needs specific information on each patient and the type of services provided, and difficult and time consuming administrative procedures must be carried out before funding is granted. In this connection, over the course of several years TAMSS developed computer software, expertise and unique forms providing funding agencies with the information needed. These methods and procedures furnished TAMSS with significant advantages over other competitors. TAMSS does not charge indigent clients for its services; rather, it receives a percentage (15%) of the money recovered from the funding sources that is paid to the hospitals.

One of the difficulties inherent in the business is the fact that its forms and procedures, once developed, are readily transferable to anyone wishing to utilize them to compete against TAMSS. Moreover, the market is so large that TAMSS can not properly service all customers. Thus, TAMSS is quite vulnerable to employees willing to steal trade secrets and use their training to start competing businesses. *See e.g. Gonzales v. Zamora,* 791 S.W.2d 258, 260–61 (Tex.App.—Corpus Christi 1990, no writ). After this vulnerability became apparent through the *Gonzales* litigation, TAMSS required all employees to sign a non-competition agreement.

When Gomez began working for TAMSS he received a straight commission for marketing the company's services to doctors

---

1. A detailed rendition of the facts underlying the genesis of appellee, Texas Aries Medical Social Services (TAMSS), is found in an earlier opinion by this court, *Gonzales v. Zamora,* 791 S.W.2d 258 (Tex.App.—Corpus Christi 1990, no writ). In the interests of judicial economy, we will only set forth the facts most relevant to this appeal.

throughout the Valley. Over time, Gomez became proficient at the business, and he was given more responsibility. After working in the Valley, Gomez was transferred to Midland, to San Antonio, and then to Dallas. His duties included soliciting hospitals to become customers for TAMSS.

On March 6, 1988 Gomez signed a new employment contract which included a non-competition covenant (reproduced in the appendix). The contract provided new terms of employment, including added responsibilities and increased pay.

Gomez was terminated on July 6, 1989, allegedly because of problems with his performance and Zamora's discovery of his plan to create a competing business. On July 12, 1989, Gomez started MAPA, which began providing the same services as TAMSS. MAPA employed several former TAMSS employees and allegedly used the forms and techniques developed by TAMSS. In October 1989, MAPA entered into a contract providing the same services as TAMSS with Harris Methodist Southwest Hospital and Harris Methodist HEB. Subsequently, MAPA contracted with six other hospitals, including two which were former customers of TAMSS.

This litigation commenced on October 12, 1989, when appellee filed suit seeking a temporary restraining order in the 103rd District Court in Cameron County enjoining appellants from violating the terms of the non-competition covenant. After a hearing, the TRO was granted. After an additional hearing, proceedings involving the same parties were consolidated and the court entered a temporary injunction on November 1, 1990. The injunction provided:

IT IS THEREFORE ORDERED, that Jeffrey Gomez, and M.A.P.A. Inc., its officers, and employees, Defendants herein, be, and they hereby are, commanded forthwith to desist and refrain from:

1. Directly or indirectly entering into or engaging generally in direct competition with the Plaintiffs in the business of providing medical third party resource assistance for medically needy indigent clients on behalf of any hospital and/or health care provider with which the Defendant Jeffrey Gomez has had business dealings with on behalf of Plaintiff while in the Plaintiff's employment, any hospital and/or health care provider with which Plaintiffs had any existing contract at the time of Defendant Jeffrey Gomez's termination of employment, being July 6, 1989, with Plaintiffs, and/or any hospital or health care provider before which Plaintiff had any pending proposals at the time of the Defendant Jeffrey Gomez's termination of employment with Plaintiffs;

2. From continuing to employ Plaintiffs' former supervisors, specifically Betty Gomez, Paul Gomez, and Daniel Tapia, and from call on, soliciting, selling to, serving, or otherwise doing business with, personally or through his employees, any customers or former customers and/or Plaintiffs' clients;

3. From directly or indirectly;

a. Interfering with and/or soliciting customers currently being served by Plaintiffs;

b. Disparaging Plaintiffs' reputation and business for the purpose of interfering with the Plaintiffs' contractual relationship with its present, pending, and future customers;

c. Conveying, selling, encumbering, or liquidating any assets of M.A.P.A. Inc., until judgment in this cause is entered by this Court.

By a sole point of error, appellant complains that the trial court erred in granting the temporary injunction. In subpoints E and H of appellant's point of error, appellants assert that the temporary injunction was improperly granted because TAMSS did not request an appropriate injunction. They argue that appellee failed to offer evidence:

a) concerning the hospitals with which Gomez had business dealings on behalf of Texas Aries while in Texas Aries employ; and

b) of the hospitals which were under contract with Texas Aries at the time of Gomez' termination or the hospitals with

which Texas Aries had any pending proposal at the time of Gomez' termination. The essence of this subpoint is that the evidence admitted at the hearing did not support the district court's granting of the temporary injunction.

 The trial court is cloaked with great discretion in granting or denying a temporary injunction, and its action will not be disturbed on appeal unless a clear abuse of discretion is shown. *Valenzuela v. Aquino*, 763 S.W.2d 43, 44 (Tex.App.—Corpus Christi 1988, no writ); *Garza v. City of Mission*, 684 S.W.2d 148, 153 (Tex.App.—Corpus Christi 1984, writ dism'd). The question before the trial court during a hearing for a temporary injunction is whether the applicant is entitled to preservation of the status quo pending trial on the merits. *Garza*, 684 S.W.2d at 153.

On appeal, this court views the evidence in the light most favorable to the trial court's judgment. *Valenzuela*, 763 S.W.2d at 44; *Garza*, 684 S.W.2d at 154. However, when no evidence supports the issuance of the injunction, this court must reverse the trial court's ruling and dissolve the injunction.

In 1989, the Texas Legislature enacted legislation establishing the enforceability of a covenant not to compete when such a covenant:

"(1) is ancillary to an otherwise enforceable agreement but, if the covenant not to compete is executed on a date other than the date on which the underlined agreement is executed, such covenant must be supported by independent valuable considerations; and

(2) contains reasonable limitations as to time, geographical area, and scope of activity to be restrained that do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee."

TEX.BUS & COM.CODE ANN. § 15.50(2) (Vernon supp.1990)

Section 15.51(b) further provides that:

[i]f the primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services, the promisee has the burden of establishing that the covenant meets the criteria specified by Subdivision (2) of section 15.50 of this code. If the agreement has a different primary purpose, the promisor has the burden of establishing that the covenant does not meet those criteria. For the purposes of this subsection, "burden of establishing a fact" means the burden of persuading the triers of fact that the existence of the fact is more probable than its nonexistence.

Initially, we must determine whether the primary purpose of the employment agreement obligated Gomez to render personal services. The employment contract provides that Gomez was employed as a "Financial Eligibility Worker". This term is not defined in the employment contract. The evidence shows that at the time of the execution of the agreement Gomez was hired to solicit and provide services to hospitals in San Antonio and other cities in Texas. After providing the services in San Antonio, he was transferred to Dallas to perform the same services. This required Gomez to: 1) directly contact hospitals that were not already under contract with TAMSS in order to solicit their business; and 2) provide services to hospitals under contract. These activities, like sales, are in the nature of personal services. *See Daytona Group of Texas, Inc. v. Smith*, 800 S.W.2d 285, 289. (Tex.App.—Corpus Christi 1990) Therefore, TAMSS had the burden of proving that the covenant contained reasonable limitations regarding time and geographical area. § 15.51(b). In addition, TAMSS had to prove that the scope of activity to be restrained did not impose a greater restraint than necessary to protect its goodwill or other business interest.[2] *Id.*

The covenant barred appellant from competing in an "existing marketing area" and a "future marketing area of the employer begun during employment". Attachment

---

2. Appellee repeatedly stated at the temporary injunction hearing that it was not requesting relief based on use of trade secrets. Thus, we need not determine whether appellant's use or threatened use of trade secrets is a business interest worthy of protection.

A, which described the "Future Marketing Area Of Employer" listed thirty seven Texas cities, including all major metropolitan areas and several minor cities. Thus, the geographic area covered by the covenant encompasses the thirty seven cities listed in "Attachment A," as well as the "existing marketing area."

Except for the attachment to the covenant not to compete, TAMSS at no time offered evidence clearly defining its existing or future marketing area. At the temporary injunction hearing TAMSS only offered evidence that it was servicing approximately 36 hospitals, but it never specified which hospitals. Zamora testified that TAMSS had lost contracts with hospitals as a result of Gomez's "breach of fiduciary trust," however, he did not state which hospitals, if any, were lost as a direct or indirect result of MAPA competition.

Zamora further testified that solicitations by Gomez to hospitals under contract with TAMSS caused a loss of $300,000 to $400,-000 in revenues. The evidence also showed that Gomez had done marketing for TAMSS in many of the areas where it was established or was marketing itself. At the time that Gomez was terminated, Texas had over 540 hospitals located in over 300 cities and TAMSS had contracts or had marketed itself in about 225 hospitals and only 50 cities. TAMSS further offered evidence that Gomez had contracted with 7 of 9 hospitals formerly served by TAMSS; each of those contracts had been supervised by Gomez or former TAMSS employees who had been employed by Gomez.

 After reviewing the evidence, we hold that TAMSS failed to establish that the covenant not to compete contained reasonable limitations on geographic area because the record does not reflect the geographic area intended to be covered by the covenant. Moreover, the covenant as written fails to accurately specify the geographic scope covered by covenant. Indefinite descriptions of the area covered by a non-competition covenant render them unenforceable as written. *See Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 951–52 (1960) (geographic

scope described as "any area where Weatherford Oil Tool Company, Inc., may be operating or carrying on business" held overbroad); *Hice v. Cole*, 295 S.W.2d 661, 664–65 (Tex.Civ.App.—Beaumont 1956, no writ) ("trade territory heretofore served by him ... which might lie on the borders of Orange County" held indefinite). Thus, we conclude that the covenant is unenforceable not only because no evidence defined the geographic scope of the agreement, but also because it was indefinite as written. Thus, the covenant is incapable of supporting injunctive relief without reformation. *Weatherford*, 340 S.W.2d at 951–52; *Hice*, 295 S.W.2d at 664–65; Tex.R.Civ.P. 683.

Moreover, if we look only to those cities listed on Attachment A, the covenant not to compete would cover virtually every major metropolitan area in the State of Texas. Non-competition covenants with such a broad geographic scope have generally been held unenforceable, particularly when no evidence establishes that the employee actually worked in all areas covered by the covenant. *Diversified Human Resources Group, Inc. v. Levinson–Polakoff*, 752 S.W.2d 8, 12 (Tex.App.—Dallas 1988, no writ); *Martin v. Linen Systems for Hosp., Inc.*, 671 S.W.2d 706, 709 (Tex.App.—Houston [1st Dist.] 1984, no writ).

Appellee requests reformation of the injunction in the event that we find the injunction overbroad, however, we cannot do so. Section 15.51(c) specifies the procedure for enforcement of overbroad non-competition covenants. First, the promisee must request that the trial court reform the covenant. Second, the trial court shall reform the covenant so that it is reasonable as set forth in § 15.50(2). Then, the promisee may seek enforcement through injunction. We have previously stated that the failure to request reformation in the trial court operates as a waiver of the right of reformation. *See Daytona*, 800 S.W.2d at 290; *see also Peat, Marwick, Mitchell & Co. v. Sharp*, 585 S.W.2d 905, 908 (Tex.Civ. App.—Amarillo 1979, writ ref'd n.r.e.) (failure to request reformation of covenant in trial court waived common law right to reformation).

■ There is nothing in the record reflecting that TAMSS requested the trial court to reform the covenant. Appellee's statutory right to reformation is therefore waived. *Daytona,* 800 S.W.2d at 290. The fact that the temporary injunction entered by the trial court was geographically narrower in scope than the covenant not to compete is irrelevant since appellee failed to request reformation of the covenant in the trial court.[3]

■ In light of the specific language in section 15.51(c) requiring the promisee of a covenant not to compete to request reformation, and our prior ruling in *Daytona,* we hold that merely requesting injunctive relief narrower in scope than the non-competition covenant, without reformation of the covenant, is not sufficient to meet the requirements of § 15.51(c).

Without specific language in the covenant or evidence defining the geographic area the covenant covered, the trial court abused its discretion in granting the temporary injunction. We therefore sustain appellant's first point of error. The injunction is hereby DISSOLVED, and the cause REMANDED to the trial court.

---

**3.** We note that the injunction suffers from many of the same defects found in the covenant.