

# NUMBER 13-13-00495-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DOWN TIME-SOUTH
TEXAS, LLC,                                                          Appellant,

**v.**

GLEN ROY ELPS,                                                      Appellee.

## On appeal from the County Court at Law No. 3
## of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Longoria**

This is an accelerated, interlocutory appeal of an order entered by County Court

at Law Number Three of Nueces County, Texas denying an application for a temporary

injunction filed by Down Time – South Texas, LLC ("Down Time") in its suit against Glen

Roy Elps, a former employee and current member of Down Time.  *See* TEX. CIV. PRAC. &
REM. CODE ANN. § 51.014(a)(4) (West 2008).  For the reasons set forth below, we affirm
the trial court's order.

## I. BACKGROUND

In the underlying suit, Down Time is seeking to enforce the provisions of a non-
compete agreement.  *See* TEX. BUS. & COM. CODE ANN. § 15.51(a) (West 2011).  On
August 19, 2013, the trial court held a hearing on Down Time's application for a temporary
injunction; however, only one exhibit was admitted into evidence.  The exhibit consists of
eighteen pages of regulations applicable to Down Time's members, including Mr. Elps.
Regulation 5.4 sets forth the non-compete agreement at issue in this case.

At the outset of the hearing, Mr. Elps' attorney objected to Down Time's request
for a temporary injunction on the grounds that the non-compete agreement is
unenforceable as a matter of law because the duration of the agreement is indefinite.
*See* TEX. BUS. & COM. CODE ANN. § 15.50(a) (West 2011) (providing that "a covenant not
to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement
at the time the agreement is made to the extent that it contains ***limitations as to time***,
geographical area, and scope of activity to be restrained ***that are reasonable*** and do not
impose a greater restraint than is necessary to protect the goodwill or other business
interest of the promisee") (emphasis added).  In relevant part, the agreement states that
it will last "[f]or so long as a member shall own an interest in the Company and for a further
period of three (3) years from and after the date of redemption, sale or other disposition
of the member's interest in the Company . . . ."

At the hearing, Mr. Elps' attorney told the trial court the following:

2

Your Honor, we understand that the temporary injunction requires -- it's an evidentiary hearing obviously. So, you know, if they intend to put on evidence and if we get to that, we intend to put on evidence as well.

But we have some objections both procedural and substantive to . . . the temporary injunction, because we think it's a matter of law. . . . [A]s a matter of law, they can't get a temporary injunction, so even if they put on evidence, they wouldn't be able to solve this problem. . . .

[I]t's our argument here that the non-compete agreement that's sought to be enforced is indefinite. It will last as long as my client owns his stock, which is forever. They even in their pleadings [sic] they acknowledge that it's unclear when that may or may not be. . . .

So we're faced then with the situation where on its face, the non-competition agreement is . . . forever, so it's unreasonable on its face. The only way to possibly enforce it would be to reform it. That can't be done at this time; therefore, there is no need to put on any evidence in order to . . . try to reform it. . . .

[T]hey simply put the cart before the horse, and . . . the reason I'm bringing this up and spending time on this is because I think that it would be a waste of the Court's time to hear evidence when it's just absolutely impossible as a matter of law to enforce it, in a temporary injunction hearing. If this is going to be done, it's going to have to be done when we try this case. I think that's what the case law, that's what the statutes all . . . hold.

Mr. Elps' attorney also objected to the request for a temporary injunction based on the fact that Mr. Elps' current employer, Dresser-Rand Company, had not been made a party to the suit. *See Bays v. Wright*, 132 S.W.2d 144, 145 (Tex. Civ. App.—Waco 1939, no writ) ("All persons in whose favor or against whom there might be a recovery, however partial, and all persons who are so interested that their rights or duties might be affected by the decree, must be made parties in order that their rights may be adjudicated and finally determined, and all parties bound by a single decree.").

Down Time's attorney responded that to the extent that the agreement is indefinite in duration, the trial court is required to reform the agreement such that it is reasonable and enforceable. Down Time's counsel told the trial court the following:

3

I see that the statute clearly anticipates that we're allowed to do that and the Court is allowed to do that. But what the Court can't do is strike down a non-compete, because one party claims that the duration or the geographic region are too broad, the Court is required to -- it shall reform it to become reasonable. And we're entitled -- we're able to put on the evidence today to demonstrate that. And furthermore, we need to be able to -- we need to put on our evidence, nonetheless, in order to preserve our appeal.

Down Time's attorney also argued that Mr. Elps' current employer, Dresser-Rand Company, is not a necessary party to the suit.

Mr. Elps' attorney then conceded that the trial court had the ability to reform the agreement, but he argued that the court could not reform the agreement until the final hearing. According to Mr. Elps' counsel, the trial court could not reform the agreement on Down Time's application for a temporary injunction. Again, Mr. Elps' attorney told the trial court that it was unnecessary for the court to hear additional evidence:

[I]t's true that . . . there's other aspects that they have to prove in addition to probable right of recovery, but they can't get across the first threshold, which is probable right of recovery without changing the agreement, and the Court can't change the agreement at this juncture. It has to wait until the end of the case.

The trial judge then recessed the hearing before Down Time could present any further evidence:

THE COURT: All right. The Court is going to take a recess on this hearing to go ahead and review everything that's been submitted. And when I make my decision, I'll let you know and we'll go ahead and reset the hearing for any evidence that you both wish to present. But I agree, I need to make this decision first.

[Mr. Elps' attorney]: Do you want us to hang around here?

THE COURT: No, no. If you'll just make sure you leave your phone numbers with the court manager --

4

| | |
|---|---|
| [Mr. Elps' attorney]: | Okay. |
| THE COURT: | -- then I'll - - I'll be able to call you and let you know. |
| [Down Time's attorney]: | All right. In regard, if it goes -- if we're not going to have this hearing, we still need to be able to put on our evidence where we can create a bill of review. |
| THE COURT: | All right. That's fine. |
| [Down Time's attorney]: | Even if we do that, we can set that whenever it's convenient for the Court. |
| THE COURT: | Okay, wonderful. Thank you. Thank you so much. |

The next day, August 20, 2013, Down Time filed a "brief on temporary injunctive relief" in which it asserted, *inter alia*, that it "has a legal right to present evidence in support of its application for temporary injunction, and the Court clearly has authority to determine the issues required to support a temporary injunction." Down Time also argued in relevant part as follows:

> Down Time is entitled to offer evidence of the goodwill and other business interests it seeks to protect, the geographical area which it seeks to protect from [Mr.] Elps' competition, the reasonable duration in which protection is needed, and evidence regarding the need for an injunction prohibiting [Mr.] Elps from disclosing trade secrets and otherwise violating his fiduciary duty to Down Time as a member of the LLC and key person who held the position as Vice President of Operations.

Down Time's brief concluded with the following prayer:

> Down Time . . . prays that it be granted the right to a hearing and to present its evidence in support of its application for temporary injunctive relief and to all other and further relief to which it has or may hereafter show, deem, or allege itself entitled to receive.

On September 4, 2013, Down Time's counsel sent the judge of the trial court a letter requesting an evidentiary hearing as follows:

5

> In this case, Down Time's Application for Temporary Injunction came on for hearing on the morning of August 19, 2013. Before Down Time could present evidence to demonstrate its irreparable injury and right to relief, the Court recessed the hearing to consider authorities from the parties on whether Plaintiff was entitled to present evidence.
>
> Plaintiff continues to suffer injury and is entitled to a hearing on its claim for injunctive relief. Accordingly, Plaintiff respectfully (and urgently) asks the Court to schedule a hearing so that Plaintiff may present its witnesses, and the Court, having heard the evidence, can render an order granting or denying Plaintiff's prayer for injunctive relief. For the Court's convenience, I am enclosing an Order Setting Hearing.

Thereafter, on September 10, 2013, the trial court entered an order denying Down Time's application for a temporary injunction. Although the court stated that it would allow the parties to present evidence after it made its decision, the record indicates that after the trial court made its decision, Down Time did not make any further attempt to request an evidentiary hearing or to make an offer of proof.

At Down Time's request, the trial court entered findings of fact and conclusions of law. *See* TEX. R. CIV. P. 296. The court gave six basic reasons for its ruling, which we summarize as follows.

First, the trial court concluded that the non-compete agreement is unenforceable because its duration is not "definite." *See Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 777 (Tex. 2011) (holding that "[t]he hallmark of enforcement is whether or not the covenant is reasonable" and stating that "the statute's core inquiry is whether the covenant" contains reasonable limitations). The trial court found that the time limitation contained in the non-compete agreement was "three (3) years." However, the trial court also found that the limitation "does not go into effect until after the member redeems, sells, or otherwise disposes of his interest in Down Time." In addition, the trial court found that Down Time had conceded in its pleadings that "it is unclear when Mr. Elps' . . . ownership interest will

6

conclude."  The trial court observed that Down Time's regulations do "not contain any provisions that would provide for any acquired sale, redemption, or disposition of an interest in Down Time that would provide any limitation of time."  Based on the foregoing, the court concluded that the non-compete agreement has an "indefinite limitation of time" and therefore "is unenforceable as written."  *See Gomez v. Zamora*, 814 S.W.2d 114, 118 (Tex. App.—Corpus Christi 1991, no writ) ("Indefinite descriptions of the area covered by a non-competition covenant render them unenforceable as written.").

Second, the trial court concluded that reformation is not available to Down Time because Down Time has not pled a request for reformation.  *See id.* ("We have previously stated that the failure to request reformation in the trial court operates as a waiver of the right of reformation.").

Third, the trial court noted that Down Time does not seek enforcement of the non-compete agreement as written.  According to the trial court, Down Time "has requested that [the] . . . court 'enforce the noncompetition agreement for three years from the date on which [Mr.] Elps begins to actually comply . . . with this covenant not to compete.'"  The trial court ruled that Down Time is not entitled to request relief that is narrower in scope than the non-compete agreement without reformation of the covenant.  *See id.* at 119 ("The fact that the temporary injunction entered by the trial court was geographically narrower in scope than the covenant not to compete is irrelevant since appellee failed to request reformation of the covenant in the trial court.").

Fourth, the trial court concluded that even if Down Time had requested it, "[r]eformation is not available in the temporary injunction phase of the case, as Section 15.51 applies to final trials on the merits and final injunctions, and not temporary

7

injunctions." *See Gray Wireline Serv., Inc. v. Cavanna*, 374 S.W.3d 464, 470 (Tex. App.—Waco 2011, no pet.) ("[W]e agree that reformation pursuant to section 15.51(c) of the Business and Commerce Code is a remedy to be granted at a final hearing, whether on the merits or by summary judgment, not as interim relief."); *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 238–39 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (en banc) ("Reformation is generally a final remedy.").

Fifth, the trial court ruled that even if reformation were available during the temporary injunction phase of the case, the non-compete agreement would still be unenforceable because the "full extent" of the court's "discretionary powers" would be to remove the limitation of time of "three (3) years," which would still leave the duration of the agreement "indefinite."

Sixth, and finally, the trial court concluded that preliminary injunctive relief is not available for the additional reason that Mr. Elps' employer, Dresser-Rand Company, has not been made a party to the proceeding.

## II. ISSUES ON APPEAL

Down Time now raises five issues on appeal in which it contends as follows: (1) "[t]he trial court erred in denying Down Time's application for [a] temporary injunction based on any theories upon which the court denied the temporary injunction and on any theory argued by Mr. Elps"; (2) "[t]he trial court erred in denying the requested temporary injunction for any reason related to Chapter 15 of the Texas Business and Commerce Code"; (3) "[t]he trial court erred in denying the requested temporary injunction based on its conclusion that preliminary injunction relief is not available because Mr. Elps' new employer has not been joined and has a justiciable interest"; (4) "[t]he trial court erred in

8

denying the requested temporary injunction based on its finding that Down Time's Regulations do not contain provisions for 'acquired redemption, sale, or disposition' of Mr. Elps' interest in Down Time"; and (5) "[t]he trial court erred in denying Down Time's application for temporary injunction without affording Down Time the opportunity to present evidence on any of its several causes of action against Mr. Elps, or on Down Time's probable right of recovery on the merits of each, or on Down Time's probable irreparable injury prior to trial in the absence of a temporary injunction."

### III. ANALYSIS

The question presented in this appeal is whether the trial court erred in denying Down Time's application for a temporary injunction.

### A. Applicable Law

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). "A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Id.* "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id.*

### B. Standard of Review

"Whether to grant or deny a temporary injunction is within the trial court's sound discretion." *Id.* "A reviewing court should reverse an order granting [or denying temporary] injunctive relief only if the trial court abused that discretion." *Id.* "The reviewing court must not substitute its judgment for the trial court's judgment unless the

9

trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion." *Id.* "[T]he trial court's failure to properly apply the law to the undisputed facts is an abuse of discretion for which the judgment of the trial court may be reversed." *Dresser Indus., Inc. v. Forscan Corp.*, 641 S.W.2d 311, 317 (Tex. App.—Houston [14th Dist.] 1982, no writ); *see also Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) ("A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ.").

## C. Discussion

As set forth above, the trial court's findings and conclusions indicate that its denial of Down Time's application for a temporary injunction was based on Down Time's failure to establish a probable right to the relief sought. *See Butnaru*, 84 S.W.3d at 204. Our analysis therefore begins with this element. *See id.*

Initially, we must address the threshold issue: in a suit to enforce a noncompetition agreement, is the defendant's current employer a necessary party such that the absence of Dresser-Rand from the instant suit precluded Down Time from establishing a probable right to the relief sought? We begin by noting that in one unpublished opinion, the Fort Worth Court of Appeals held that the trial court did not err by failing to require the joinder of all necessary parties before issuing a temporary injunction. *See Whittier Heights Maint. Ass'n v. Colleyville Home Owners' Rights Ass'n*, No. 02–10–00351–CV, 2011 WL 2185699, at *4 (Tex. App.—Fort Worth June 2, 2011, no pet.) (mem. op.). The Beaumont Court of Appeals has taken a similar position. *See Winslow v. Duval County Ranch Co.*, 519 S.W.2d 217, 226 (Tex. Civ. App.—Beaumont 1975, writ ref'd n.r.e.) ("[W]e were not

10

impressed with defendants' claim of non-joinder of necessary parties as a condition precedent to the issuance of the temporary injunction. In the ordinary case, such joinder is not required . . . .").

Yet, quite some time ago, the Texas Supreme Court held "that the refusal of a temporary injunction when there is an absence of necessary parties, who might readily be joined in the suit, cannot be deemed an abuse of discretion." *Scott v. Graham*, 292 S.W.2d 324, 325 (Tex. 1956). Likewise, the San Antonio Court of Appeals has explained that "parties [who] have contract rights, which would be affected by such an injunction, . . . are necessary parties without whose presence the injunction is unauthorized." *Bourland v. City of San Antonio*, 347 S.W.2d 660, 661 (Tex. Civ. App.—San Antonio 1961, no writ); *see also Davis v. Turner*, 145 S.W.2d 258, 260 (Tex. Civ. App.—Galveston 1940, no writ) (reversing order granting temporary injunction because only four of forty-six officers were joined in suit). Finally, the Waco Court of Appeals issued a decision cited by Mr. Elps and the trial court in support of the proposition that Dresser-Rand is a necessary party whose absence from this suit precluded Down Time from establishing its entitlement to a temporary injunction. *See Bays*, 132 S.W.2d at 144. In *Bays*, the Waco Court of Appeals articulated the "well settled rule that in a suit of this kind to cancel a contract or to restrain the enforcement thereof, all parties to such contract are necessary parties to the suit." *Id.* at 145. The court noted that a suit for temporary injunctive relief is "an equitable suit and the primary object of equity is to grant full relief and to adjust in one suit the rights and duties of all interested parties that grow out of or are connected with the subject matter of the suit." *Id.* For this reason, the court held as follows:

> All persons in whose favor or against whom there might be a recovery, however partial, and all persons who are so interested that their rights or

duties might be affected by the decree, must be made parties in order that their rights may be adjudicated and finally determined, and all parties bound by a single decree.

*Id.*

With the foregoing in mind, we return to the pleadings. In its application for temporary injunction and original petition, Down Time provides the following description of the relief it seeks in this suit:

Down Time seeks a temporary, then permanent, injunction against Mr. Elps prohibiting his continued employment by Dresser-Rand, as well as employment with any other company that provides machining and mechanical services to industrial customers like those in the petrochemical, refining or power generation fields. This injunctive relief is requested to extend for three years from the date on which Mr. Elps actually begins to comply with the covenant not to compete he agreed to in the Purchase Option Agreement.

Clearly, Down Time seeks injunctive relief that would affect, and in fact, terminate, Dresser-Rand's employment relationship with Mr. Elps. Although Down Time has not named Dresser-Rand as a party to this suit, the relief requested by Down Time, if it were granted, would have the direct effect of enjoining both Dresser-Rand and Mr. Elps from performing under their existing employment contract. Thus, in our view, Down Time has requested relief against both Dresser-Rand and Mr. Elps. Under these circumstances, we conclude that the trial court did not abuse its discretion in ruling that Dresser-Rand is a necessary party whose absence from the case precluded Down Time from establishing its entitlement to the preservation of the status quo pending final judgment. *See id.* Accordingly, we overrule Down Time's third issue in which it contends that the trial court erred in denying its application for a temporary injunction based on the absence of Dresser-Rand from the suit. Furthermore, because "the refusal of a temporary injunction when there is an absence of necessary parties. . . cannot be deemed an abuse of

12

discretion," Down Time cannot establish an abuse of discretion in connection with any of its other issues. *Scott*, 292 S.W.2d at 325.

Finally, we note that Down Time cannot establish an abuse of discretion for the additional reason that there is no evidence of "a probable, imminent, and irreparable injury in the interim," which is a necessary element for a temporary injunction. *Butnaru*, 84 S.W.3d at 204. We reject the assertion made by Down Time in its fifth issue that the trial court erred in ruling on its application for a temporary injunction without giving Down Time an opportunity to present evidence. As set forth above, the trial judge stated on the record that she would allow Down Time to make an offer of proof even after she made her decision. However, nothing in the record indicates that Down Time requested to make an offer of proof after the judge denied its application for a temporary injunction. Yet, at the hearing, Down Time's attorney acknowledged that "we need to put on our evidence . . . in order to preserve our appeal." *See Langley v. Comm'n for Lawyer Discipline*, 191 S.W.3d 913, 915 (Tex. App.—Dallas 2006, no pet.) ("[A]ppellant made no bills of exceptions, formal or informal. No offer of proof was made of the excluded evidence in any form. The excluded evidence is not in the record. Thus, appellant waived his complaint by failing to properly preserve error."). Given that there is no evidence of an irreparable injury, we cannot conclude that Down Time established its entitlement to a temporary injunction. *See Butnaru*, 84 S.W.3d at 204. Accordingly, we overrule Down Time's remaining issues.

## IV. CONCLUSION

We affirm the trial court's order.


NORA L. LONGORIA
Justice

Delivered and filed the
20th day of March, 2014.