**Reverse and Remand and Opinion Filed February 16, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-21-00238-CV

**EVELYN JOYCE ARTERBERRY AND ANGELA ARTERBERRY,**
**Appellants**
**V.**
**WILLOWTAX, LLC, Appellee**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-01621**

## MEMORANDUM OPINION

Before Justices Myers, Molberg, and Garcia
Opinion by Justice Myers

Appellants Evelyn Joyce Arterberry and Angela Arterberry appeal from the trial court's order granting a temporary injunction. In six issues, they argue the trial court abused its discretion because the order (1) lacks the specificity regarding the probable, imminent, and irreparable harm required under rule 683; (2) contains provisions that are vague and fail to provide adequate notice, also in violation of rule 683; (3) mandates that funds be deposited into the registry of the court when there is no final judgment in the case; (4) constitutes an unconstitutional, impermissible prior restraint of the Arterberrys' rights to free speech; (5) does not provide specific details of why the damages sought by appellee Willowtax, LLC, would not adequately

compensate it or that the damages sought cannot be measured by any certain pecuniary standard; and (6) did not provide specific details regarding the likelihood that Willowtax will prevail on any of its claims. We reverse and remand.

## BACKGROUND AND PROCEDURAL HISTORY

Appellee Willowtax, LLC (Willowtax) sued various parties including appellants Evelyn Joyce Arterberry and Angela Arterberry (the Arterberrys) for fraud by misrepresentations and omissions, breach of fiduciary duty, defamation, conversion, harmful access by computer, tortious interference with contract and prospective benefits, conspiracy, and for an accounting.

Willowtax's petition alleged that on or about August 1, 2020, it purchased all the assets of Interstate Business Management, Inc. (Interstate), a small business and individual bookkeeping and accounting practice, for $1.3 million. The agreement called for the sale of all Interstate's business assets including the goodwill of the accounting practice; all customers and customer lists; and the right for Willoxtax to perpetually use the name "Interstate Business Management" as a d/b/a for the continuation, continuity, and success of Willowtax's operation of the tax practice, as well as the telephone numbers, fixtures, furniture, equipment, accounts, supplies, business books, and leases of the business—which were necessary for its successful continued operation. Willowtax also alleged that, as part of the agreement, it purchased all approximately 500 of Interstate's small business clients as well as all cashflow, cash accounts, and receivables, and there were no exclusions to the assets

–2–

purchased.

But Willowtax alleged that immediately after purchasing Interstate's assets it learned that accounts receivable that should have belonged to Willowtax had been redirected to non-Willowtax accounts. This "redirection" of receivables was, according to Willowtax, never part of the agreement, never agreed to, and the scale of the "initial theft" was "estimated to be about $50,000." Willoxtax also claimed that two company vehicles, the value of which were "reasonably believed to be approximately $100,000," were never turned over to Willowtax despite not being excluded from the asset sale, and that one of them was transferred to Joyce Arterberry personally.

Willowtax further alleged:

Much more seriously, by September 1, 2020, *many* long-term clients that had been with the company for many years (5-18 years) suddenly decided to cancel their accounting services with the [Willowtax] D/B/A Interstate Business Management. This significant loss of business has had a devasting and financially damaging effect on [Willoxtax] that will take years to overcome because long-term clients cannot materialize in the short run. [Willowtax]'s regional territory manager, Shannon Higgins, visited these clients, who in turn told her they were indeed still with [Interstate], yet revenue was not coming into [Willowtax] D/B/A Interstate Business Management. The reason for this inconsistency would not become apparent for another several months, after an elaborate and well-timed set of lies and ruses by the conspirator Defendants. Although [Interstate] sold its business name (Interstate Business Management) to [Willoxtax] as a D/B/A as part of the asset purchase, the Defendants led many of the recently acquired [Willoxtax] clients to believe that they (the clients) were still doing business with [Interstate] even though they were in fact being solicited to the *Defendants'* new competing business. It is the good faith belief of [Willowtax] that they resulted in substantial Monthly accounting

payments being misdirected from [Willoxtax] to businesses operated by Defendants.

\* \* \* \*

The conspirator Defendants had been telling clients, *inter alia*, that [Willowtax] was going out of business and had no money. This was not true in the least but for the conspirators' own actions to denude [Willowtax] of the benefits of its asset purchase. As of January 2021, [Willowtax] has retained only ninety-four of the two hundred and fifty clients from the Mesquite office. [Willoxtax] has lost all of the bookkeeping revenue, plus all of the audit work and tax work. The lost revenue is about $500,000 per year so far and is increasing weekly.

The petition sought attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, and special and exemplary damages.

In a separate filing, Willowtax also filed a verified application for a temporary restraining order and a temporary injunction. The trial court signed an ex parte temporary restraining order on February 15, 2021. On March 23, it signed a temporary injunction order. The temporary injunction contains both prohibitive provisions and a mandatory provision that the Arterberrys deposit into the registry of the trial court "all funds received from any client of [Willowtax] which was an [Interstate] client as of August 1, 2020." The Arterberrys brought this accelerated appeal from the court's temporary injunction order.

## DISCUSSION

In their first issue, the Arterberrys contend the trial court abused its discretion in granting the temporary injunction because it lacks specificity as to the probable, imminent, and irreparable harm required under rule 683 of the Texas Rules of Civil

–4–

Procedure. In issue two, they argue the temporary injunction contains provisions that are vague and fail to provide adequate notice to the Arterberrys of the acts they are restrained from doing, also in violation of the requirements of rule 683.

A temporary injunction preserves the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Vista Bank v. Nelezer, Inc.*, No 05-21-00348-CV, 2021 WL 5027764, at *1 (Tex. App.—Dallas Oct. 29, 2021, no pet.) (mem. op.); *see Bartoo v. Dallas Area Rapid Transit*, No. 05-02-00828-CV, 2003 WL 751812, at *2 (Tex. App.—Dallas Mar. 6, 2003, no pet.) (mem. op.). It is an extraordinary remedy and does not issue as a matter of right. *Butnaru*, 84 S.W.3d at 204; *Vista Bank*, 2021 WL 5027764, at *1. To obtain a temporary injunction, the applicant must plead and prove (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Vista Bank*, 2021 WL 5027764, at *1.

Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Id*. We should reverse an order granting injunctive relief only if the trial court abused that discretion. *Id*. We must not substitute our judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Id*.

Texas Rule of Civil Procedure 683 requires every order granting a temporary injunction to state the reasons for its issuance, be specific in terms, and describe in

reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained. TEX. R. CIV. P. 683. The purpose of the rule is to ensure the parties are adequately informed of the acts they are enjoined from doing and why they are enjoined from doing them. *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 744 (Tex. App.—Dallas 2011, no pet.); *Wimbrey v. Worldventures Mktg., LLC*, No. 05-19-01520-CV, 2020 WL 7396007, at *3 (Tex. App.—Dallas Dec. 17, 2020, no pet.) (mem. op.). The order must be specific and legally sufficient on its face and not merely conclusory, and it must be as definite, clear, and precise as possible. *Wimbrey*, 2020 WL 7396007, at *3. The trial court must set out in the temporary injunction order the reasons the court deems it proper to issue the injunction, including the reasons why the applicant will suffer injury if the injunctive relief is not ordered. *Id.*; *Reliant Hosp. Partners, LLC v. Cornerstone Healthcare Grp. Holdings, Inc.*, 374 S.W.3d 488, 495 (Tex. App.—Dallas 2012, pet. denied).

The requirements of rule 683 are mandatory and must be strictly followed, even if a sound reason for granting relief appears elsewhere in the record. *Wimbrey*, 2020 WL 7396007, at *3; *Reliant Hosp. Partners,* 374 S.W.3d at 495. If a temporary injunction order fails to comply with the mandatory requirements of rule 683, it is void. *Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000) (per curiam); *Vista Bank*, 2021 WL 5027764, at *4; *Massenburg v. Lake Point Advisory Grp., LLC*, No. 05-19-00808-CV, 2020 WL 1472215, at *1 (Tex. App.— Dallas Mar. 26, 2020, no pet.) (mem. op); *Wimbrey,* 2020 WL 7396007, at *3; *4415*

*W Lover's Lane, LLC v. Stanton*, No. 05-17-01363-CV, 2018 WL 3387384, at *3 (Tex. App.—Dallas July 12, 2018, no pet.) (mem. op.); *Freedom LHV, LLC v. IFC White Rock, Inc.*, No. 05-15-01528-CV, 2016 WL 3548012, at *2 (Tex. App.—Dallas June 28, 2016, pet. dism'd); *see Reliant Hosp. Partners,* 374 S.W.3d at 495. Furthermore, because a temporary injunction order that fails to comply with rule 683 is void, a party cannot waive the error, and an appellate court can declare a temporary injunction void even if the parties have not raised the issue. *E.g.*, *Vista Bank*, 2021 WL 5027764, at *4 (citing *Indep. Capital Mgmt., L.L.C. v. Collins*, 261 S.W.3d 792, 795 (Tex. App.—Dallas 2008, no pet.)); *Massenburg*, 2020 WL 1472215, at *1.

This is how the temporary injunction order in the present case addresses the plaintiff's right to a temporary injunction:

> This Court, after considering the evidence and testimony admitted at the hearing, the papers on file with this Court, and the argument of counsel finds that Plaintiff has satisfied its burden that it will likely prevail on the merits of its claims and that irreparable harm will occur if Defendants and persons acting in concert therewith are not immediately enjoined from engaging in the conduct of as interfering with the client contacts and relationships, depositing funds from clients to which Plaintiff has a superior right of possession and ownership, maligning Plaintiff's ability to provide services to clients, secreting client files from Plaintiff, and locking out Plaintiff from any of its facilities in Tulsa, Oklahoma.

The order then lists eight separately lettered actions that the defendants are "immediately restrained from, directly or indirectly." It read as follows:

> IT IS, THEREFORE, ORDERED that Defendants, their affiliates, members, managers, attorneys, agents, representatives, employees, and all those acting in concert with them having notice of this Temporary Injunction, are immediately restrained from, directly or indirectly, the

–7–

following:

a) Encumbering, conveying, concealing, or committing any act to conceal or remove from WT's exclusive control any client files which were clients of IBM as of August 1, 2020. Likewise, Defendants are hereby ordered to return all physical and digital files taken from WT's offices at any time beginning August 1, 2020;

b) Disparaging WT, its principals, or its employees to any person or entity including but not limited to past, current, or prospective clients of WT or Defendants;

c) Soliciting any current client of WT;

d) Communicating with any client of WT which was an IBM client as of August 1, 2020 forward, for any purpose whatsoever;

e) Collecting funds from any client of WT which was an IBM client as of August 1, 2020;

f) Doing business as Interstate Business Management, or any other similar name, so as to cause confusion to any client of WT which was an IBM client as of August 1, 2020;

g) Entering any office of WT outside of normal business hours and with at least 24 hour notice to WT except for emergencies.  If an emergency exists, Defendants shall immediately notify WT of its intention to enter any of its offices; and

h) Likewise, Defendants are ordered to deposit into the registry of this Court all funds received from any client of WT which was an IBM client as of August 1, 2020; and

i) Interfering with the business operations of WT or its employees or agents.

The temporary injunction, however, does not address any of the above eight actions with any details regarding how Willowtax will be "irreparably harmed" without the immediate restraint.  In paragraph (a), it orders "Defendants" "to return all physical and digital files taken from WT's offices at any time beginning August

–8–

1, 2020." And paragraph (h) orders "Defendants" "to deposit into the registry of this Court all funds received from any client of WT which was an IBM client as of August 1, 2020." But the "irreparable harm" if these two provisions are not ordered is not discussed anywhere in the temporary injunction. Rule 683 requires a trial court to explain in the injunction why each provision is required and set forth in its findings the irreparable harm that will be suffered without the provision. *See Wimbrey*, 2020 WL 7396007, at *5. Also, as we have said in another case, "[w]hile the trial court's temporary injunction order sets out examples of actions to be restrained, the order provides no nexus between the actions restrained and an irreparable injury to [plaintiff] that cannot be adequately compensated." *Reliant Hosp.*, 374 S.W.3d at 497. In this case, the order here does not explain the probable, imminent, and irreparable harm Willowtax will suffer absent an injunction against the Arterberrys. *See id*.

Another problem with the order is it contains terms that are vague and fail to provide adequate notice to the Arterberrys of the acts they are restrained from doing. We have noted before that terms that are vague and fail to provide adequate notice to appellants of the acts they are restrained from doing—in terms not subject to reasonable disagreement—violate rule 683's specificity requirement. *See Retail Servs. WIS Corp. v. Crossmark, Inc.*, No. 05-20-00937-CV, 2021 WL 1747033, at *12 (Tex. App.—Dallas May 4, 2021, no pet.) (mem. op.). Here, in provisions (a)–(h), the order repeatedly refers to "clients of" Willowtax, Interstate, and

"Defendants" without naming the "clients" or providing any manner in the order for determining who they are. Therefore, these provisions violate rule 683's specificity requirement. *See id*. The same is true of the injunction's use of the term "directly or indirectly" in the order's prohibitive provision. We have addressed comparable language before, and we agree that, here, too, it fails to meet the rule 683 specificity requirement. *See id*. at *14. We reach a similar conclusion regarding the temporary injunction's use of the term "Defendants" when "Defendants" is not a defined term in the order.

Additionally, provisions (c), (d) and (e), and (i) are impermissibly overbroad and could preclude lawful actions. *See Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 551 (Tex. App.—Dallas 1993, no writ) ("[I]n the absence of an enforceable agreement not to compete, an employer is not entitled to an injunction preventing a former employee from soliciting the employer's clients," but "it is well established that even without an enforceable contractual restriction 'a former employee is precluded from using for his own advantage, and to the detriment of his former employer, confidential information or trade secrets acquired by or imparted to him in the course of his employment.'") (quoting *Johnston v. American Speedreading Academy, Inc.*, 526 S.W.2d 163, 166 (Tex. Civ. App.—Dallas 1975, no writ)); *Gonzales v. Zamora*, 791 S.W.2d 258, 268 (Tex. App.—Corpus Christi 1990, no writ) ("An employer is not entitled to an injunction preventing a former employee from soliciting employer's clientele as it existed on the day of employee's

termination of employment, where there is no agreement not to compete."). These provisions potentially enjoin a far broader range of activity than is proper or necessary to protect Willowtax's interests. *See Rugen*, 864 S.W.2d at 551; *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 602 (Tex. App.—Amarillo 1995, no writ) (noting as important when upholding injunction that it allowed appellants to compete with former employer and only prohibited their use of employer's confidential information). Accordingly, these provisions also fail to meet rule 683's specificity requirement.

We reject Willowtax's argument that the lack of compliance with rule 683 was waived on appeal either because the Arberberrys did not object in the trial court to the order, or their counsel did not dispute certain provisions during the injunction hearing. As we noted before, an injunction order that fails to comply with rule 683 is void, and a party cannot waive the error. *E.g., Vista Bank*, 2021 WL 5027764, at *4. Indeed, because a temporary injunction order that fails to comply with rule 683 is void, a party cannot waive the error even by agreeing to the form or substance of the order. *Reiss v. Hanson*, No. 05-18-00923-CV, 2019 WL 1760360, at *3 (Tex. App.—Dallas Apr. 22, 2019, no pet.) (mem. op.) (citing *Indep. Capital Mgmt.*, 261 S.W.3d 795 n.1).

We therefore sustain appellants' first two issues, vacate the trial court's temporary injunction order, dissolve the temporary injunction, and remand the cause to the trial court for further proceedings. We do not address appellants' remaining

issues.

210238f.p05          /Lana Myers//
                                              LANA MYERS
                                              JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

EVELYN JOYCE ARTERBERRY
AND ANGELA ARTERBERRY,
Appellant

No. 05-21-00238-CV     V.

WILLOWTAX, LLC, Appellee

On Appeal from the 101st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-21-01621.
Opinion delivered by Justice Myers.
Justices Molberg and Garcia
participating.

In accordance with this Court's opinion of this date, the trial court's March 23, 2021 temporary injunction is **VACATED** and the temporary injunction is **DISSOLVED**. This cause is **REMANDED** to the trial court for further proceedings.

It is **ORDERED** that appellants EVELYN JOYCE ARTERBERRY AND ANGELA ARTERBERRY recover their costs of this appeal from appellee WILLOWTAX, LLC.

Judgment entered this 16th day of February, 2022.